[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 287 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 288 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 290 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 291 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 292 
Against the validity of the "act in relation "to the fees and compensation of certain officers in the "city and county of New York," passed December 10th, 1847, it is objected that upon its face it is a violation of the 16th section of art. 3 of the constitution of 1846, which is in these words:
"No private or local bill which may be passed by the legislature, "shall embrace more than one subject, and that "shall be expressed in the title."
Admitting for the purpose of the present question only, that the act is local, it does not seem to be liable to the objection raised against it. The effect of the act is to change the compensation of the several officers therein mentioned by giving them salaries in lieu of the fees, perquisites and emoluments to which they had previously been entitled; and to dispose of those fees, perquisites and emoluments by giving them to the city of New York, out of whose treasury the salaries were to be paid.
All this relates to and embraces but one subject, to wit: the compensation of these officers, and this is expressed in the title of the act. The fees and compensation were one and the same thing at the time of passing the act: and therefore only one subject is mentioned in the title. The existing compensation was taken away and another substituted, and all the details of the act relate to this change. It cannot be said that one bill was necessary for the purpose of giving them the salaries, and another for disposing of the fees. Nor was a separate bill required for each of the officers. It might as well be said that a local tax could not be laid without as many bills as there were to be tax payers. Many individual persons *Page 293 
or things may be embraced within the same subject within the meaning of that word in the clause in question.
The design of the constitutional provision was, to prevent the uniting of various objects having no necessary or natural connection with each other, in one bill, for the purpose of combining various pecuniary interests in support of the whole, which could not be combined in favor of either by itself.
It is plain to my mind that the statute in question is not within the mischiefs which this provision was intended to remedy, and that the objection is, therefore, not well founded.
Another and the principal point urged in favor of the appellant is this: That the fees and emoluments of the appellant's office were his absolute property while he held the office; and that the legislature had no power to take this property from him and give it to the city of New York.
It is undoubtedly true that private property cannot be taken for public use without just compensation; and equally true that the private property of one individual cannot lawfully be taken without his consent for the use of another, either with or without compensation. The exigencies of government may justify the appropriation to its own use, of the prospective emoluments of an office whether they be or be not the property of the incumbent. But if it be conceded that they are his property, such appropriation is substantially an exercise of the right of eminent domain: and in that case no exigency can absolve the government from the obligation of paying their value to the owner. Upon the supposition that such emoluments are the property of the office holder, a reduction of their amount for the benefit of the public, is in effect taking them for public use. And upon this supposition no salary can be diminished during the incumbent's term of office, and no officer's fees can be reduced during the same period, without paying an equivalent value. On the other hand if such prospective emoluments can be lawfully taken by the state and paid into the treasury, or reduced by abolishing or diminishing the whole or any part of the fees *Page 294 
allowed by law at the commencement of the incumbent's term, it is only on the ground that such fees and emoluments are not the property of the officer.
Again, if the state may take the prospective emoluments of an office and apply them to the public use, without making compensation because they are not the officer's property, it may lawfully take the same thing and apply it to the use of another individual for the same reason. The plaintiff, therefore, must fail in his demand, unless he can establish that he would have been entitled to compensation from the state, if the legislature had directed the fees to be paid into the state treasury instead of giving them to the city of New York. This was not pretended on the argument. It cannot be pretended at this day, either with truth or plausibility. The legislature has always exercised its control over the unearned emoluments of office without question or doubt of its power, except in those special cases in which the constitution has forbidden its exercise. By the constitution of 1821, the legislature was prohibited from increasing or diminishing the compensation of the governor during the term for which he should have been elected. (Art. 3, § 4.) A similar provision is contained in the constitution of 1846, in regard to the governor's salary, (Art. 4, § 5,) in regard to the lieutenant-governor, (Art. 4, § 8,) and in regard to the judges of the court of appeals, the justices of the supreme court, and the county judges, (Art. 6, §§ 7 14.) Their compensation can neither be increased nor diminished during their continuance in office. The manifest object of these prohibitions was to secure the independence of the executive and judiciary, and to prevent the exercise of undue influence by one of the great departments of the government over the others. Before these prohibitions were ordained, the power of increasing and diminishing the salaries of the governor and justices of the supreme court had been exercised at the pleasure of the legislature. In 1813 the annual salary of the governor was fixed at $5,000, (1 R.L. 527,) and so remained until the 3d of *Page 295 
April, 1821, when it was reduced to $4,000, from and after the day of passing the act. (Chap. 240) This was during the time for which Mr. Clinton was elected to the office. In 1813 the salaries of the chancellor and justices of the supreme court were fixed at $3,500 each. In 1816 they were raised to $4,500, and in 1820 they were reduced to $3,500. These offices were held during good behavior. Before the year 1810, the clerks of the supreme court were compensated by fees. By the act of the 6th April of that year, they were required to account for and pay over their fees into the treasury, and were allowed salaries in lieu thereof; and it was well understood that their compensation was greatly diminished by the change. It is unnecessary to refer to other instances of the exercise of this power. They were frequent, and their legality never questioned. This unquestioned exercise of power until the adoption of the constitution of 1846, and its partial and limited prohibition by that instrument, leave no doubt of the legality of its exercise in all cases to which the prohibition does not extend. Public offices in this state are not incorporeal hereditaments; nor have they the character or qualities of grants. They are agencies. With few exceptions, they are voluntarily taken, and may at any time be resigned. They are created for the benefit of the public, and not granted for the benefit of the incumbent. Their terms are fixed with a view to public utility and convenience, and not for the purpose of granting the emoluments during that period to the office-holder. It is proper that the officer should have time to acquire experience in the discharge of his duties, and the term therefore should not be too short. A proper sense of responsibility to the people for the faithful performance of his duty, requires that the term should not be too long. The length of the term is regulated by considerations of this nature, affecting the public interest, but having no regard to the interest of the office-holder in the emoluments. These emoluments are prescribed and allowed by law, and may be *Page 296 
altered, increased, reduced, and regulated by law, at all times, except in the cases in which the constitution has expressly forbidden it. The compensation allowed by law is deemed an equivalent for the services rendered. One of the duties of the legislature is to regulate the compensation from time to time, so that it may be neither more nor less than an equivalent. To abolish the compensation, or to reduce it unreasonably, with intent to deprive the incumbent of his office, would be an abuse of legislative power. The present case affords no ground for such a complaint, and no such complaint is made. We are not called on to say whether the courts could afford relief against such abuse.
The prospective salary or other emoluments of a public office, are not the property of the officer, nor the property of the state. They are not property at all. They are like daily wages unearned, and which may never be earned. The incumbent may die, or resign, and his place be filled, and the wages earned by another. The right to the compensation grows out of the rendition of the services, and not out of any contract between the government and the officer that the services shall be rendered by him. They may be paid for in fees at one time, in salary at another, and either may be increased or diminished in amount at any time, before they are earned. The constitution fixes the term of the plaintiff's office, but it does not prescribe his compensation, nor guaranty that it shall remain during the term as it was when he was elected. It leaves that subject to the legislature, and when the plaintiff accepted the office of clerk, he must be supposed to have known that the legislature had the power to regulate and change his compensation, as the public interests might require. These principles are settled and established by the cases referred to in the able and learned opinion delivered in the court below; and it is unnecessary to repeat or refer to them here. The judgment should be affirmed. *Page 297