## MACOMBER *a.* THE MAYOR, &c., OF NEW YORK.

*N. Y. Superior Court; At Chambers, Feb.,* 1860.

CITY OF NEW YORK.—JUDGMENT BY FRAUD OR COLLUSION.—
CONSTITUTIONAL LAW.—JUDGMENT-ROLL.—PROOF OF SERVICE.
—VOLUNTARY APPEARANCE. — JEOFAILS. — IRREGULARITY. —
AMENDMENT.—ENTRY OF JUDGMENT.—EXCUSING DEFAULT.

No court has a right to declare a legislative act unconstitutional unless it is glaringly so.

This rule applies with peculiar force to the action of a single judge on a collateral motion.

*It seems.* that the fifth section of Laws of 1859, 1127, ch. 489,—allowing the comptroller of the city of New York to take measures, in the name of the city, to reverse or modify judgments against the latter, which he has reason to believe were obtained by collusion or fraud,—is not unconstitutional.

The employment of attorneys other than the corporation counsel to represent the city of New York is valid.

The consent of the corporation counsel to the employment of other attorneys, by the city of New York, gives them, when so employed, full power to represent the city as such attorneys.

Section 5 of Laws of 1859, ch. 489,—which authorizes the comptroller to move to open judgments against the city,—renders the belief of the comptroller sufficient ground for his intervention. Such belief existing, he is, entitled to pros-

ecute any mode of relief which might be claimed by the city; and this even though fraud and collusion are denied or disproved.

Under section 174 of the Code of Procedure,—which provides for relief in cases of mistake,—the court have power, at any time within one year, to relieve against a judgment suffered by mistake, surprise, inadvertence, or excusable neglect.*

A judgment-roll, on failure to answer, must contain proof of due and timely service of the summons.

A voluntary appearance in an action gives jurisdiction, and cures defects in previous process, but will not justify a judgment on failure to answer without proof of the actual service of the summons.

The provisions of 2 Rev. Stat., 425, § 9, that no process, pleading, or record be impaired without the order of court, is still in force.

Irregularities and omissions may be amended by leave of the court in the cases

---

* In BORSDORFF a. DAYTON (*Supreme Court, First District; At Chambers, February,* 1863), it was *Held,* that where the defendant dies before the expiration of his time to answer, the court has no power to enter judgment against him. And a judgment so entered will be set aside on motion, even after the expiration of a year from the date of entry.

The cause came up on motion to vacate the judgment.

The action was brought by Charles E. Borsdorff against Charles W. Dayton. The defendant was served with the summons, January 18th, 1861; he died on the 20th January    Samuel Lord qualified as his executor on the 4th of February, 1861.    Plaintiff entered judgment, without revivor or notice to the executor. The executor was served with notice of plaintiff's claim under the judgment in September, 1862.    He now moved to vacate the judgment as irregular.

*William R. Stafford,* for the motion, cited 2 *Rev. Stat.,* 607, § 8; *Ib.,* 277, § 57; *Ib.,* 690, §§ 8, 9; and *Code,* § 121.

*Levi S. Chatfield,* in opposition, insisted that the motion should have been made within one year after entry of the judgment.    (2 *Rev. Stat.,* 606, § 3.)

BARNARD, J.—I think there was a want of power in the court to enter judgment.    By statute, defendant had 20 days within which to defend.    Long before the expiration of that time he died.    At the time of his death, he was not in default, and the plaintiff had no right to a judgment.    I cannot concede that a default can be taken against a dead man, any more than that a summons can be served on a dead body.

Motion granted.

In JAY a. DE GROOT (*Supreme Court, First District; At Chambers,* 1858), after judgment for plaintiff on failure to answer in an action brought by the receiver of a corporation against a debtor to the corporation, the defendant moved to open the judgment, among other grounds, to enable him to set up as a defence that the plaintiff was not legally appointed receiver.

*Held,* that, as the plaintiff was acting under an order of the court acquiesced in by the company of whose assets he was appointed receiver, the defendant, a debtor to the company, could not object to the irregularities, if there was in the original proceedings enough to give the court jurisdiction.

enumerated in 2 Rev. Stat., 424, 425, § 7, where an amendment is not against the right and justice of the matter in suit.

The statute of jeofails was first made applicable to judgments by default (4 & 5 *Anne,* ch. 16, § 2), and a marked distinction exists between judgments after trial and judgments by default,—unfavorable to amendments in the latter, whether the defect is suggested by the plaintiff or defendant.

Leave to plead or answer after default should not be granted, unless the party has a good defence on the merits, and the omission to plead or answer was the result of accident or mistake, without culpable negligence.

Although, under section 311 of the Code of Procedure,—which provides for insertion of costs in judgments,—the judgment be entered before the adjustment of costs, failure to comply with this rule is not sufficient to justify setting aside a judgment otherwise regular.

Although relief against irregularities cannot be obtained on a notice of motion not specifying the defects, yet in proper cases the motion should be denied without prejudice to its renewal.

In an application by the comptroller of New York to set aside a judgment by default against that city, entered upon a voluntary appearance without proof of timely service of the summons, the merits of the action being doubtful,— *Held,* that the want of proof of service of summons entitled the defendant to have the judgment vacated, and that defendants should be allowed to plead or answer without terms.

## Motion to vacate judgment, and for leave to answer.

This action was brought by Sanford L. Macomber against The Mayor, Aldermen, and Commonalty of the city of New York, to recover $538, the compensation due plaintiff as assistant keeper of one of the corporation yards. The facts are fully stated in the opinion. The motion was made by Robert T. Haws, comptroller. The motion was heard upon an order to show cause " why the judgment entered in this action should not be vacated, and why the defendants should not be permitted to file an answer to the complaint, and why the issues to be joined in said action should not be tried by a jury, or for such other or further order or relief as to the court may seem meet."

*Tracy, Powers & Tallmadge,* for the motion.

*Sanford L. Macomber,* opposed.

HOFFMAN, J.—This is a motion on behalf of the comptroller of New York to open a judgment obtained by the plaintiff against the defendants, on the 16th of December, 1859, for the sum of $554.57.

On the 15th of November, 1859, the summons and complaint were served upon Daniel F. Tieman, then mayor of the city, by leaving copies of the same at his office, in the City Hall, with Mr. Auld his clerk, the mayor being temporarily absent. The receipt of the same, it is stated on information and belief, was noted in a book kept in the office. The copy served has been seen in the office of the present counsel to the corporation, indorsed, "Rec'd Nov. 15, 1859, D. F. T.," in the handwriting of Mr. Tieman, as is believed by the deponent. A notice of appearance on behalf of the defendants was received by the attorney of the plaintiff, from Richard Busteed, Esq., late corporation counsel, signed as the attorney of the defendants, dated the 16th of November, 1859.

The summons demanded the sum of $538, with interest from its date. The prayer for judgment in the complaint was for the same.

On the 7th of December, 1859, a notice to the following effect was drawn and signed by the plaintiff's attorney, and served upon Mr. Busteed on the 8th of that month: "that the amount claimed, and the interest, and the costs and disbursements, as above stated, would be ascertained and adjusted by the clerk, at his office in the City Hall, on the 13th of December." A statement of the amount claimed, of the interest, and the costs accompanied this notice.

On the 13th of December, 1859, an affidavit was made by the plaintiff's attorney, that no answer, demurrer, or notice of appearance had been received in pursuance of the requirement of the summons, and as to the disbursements having been necessarily made or incurred. This was subjoined to a statement for judgment of the amount, interest, and costs, being together $554.57. Then followed the judgment in this language: "Judgment, December 13, 1859. The summons in this action having been personally served on the defendants, on the sixteenth day of *December*, 1859, and no answer or demurrer to the complaint having been received by the plaintiff's attorney, as required by the summons;—Now, on motion of Daniel H. Stone, plaintiff's attorney, it is hereby adjudged that Sandford L. Macomber, the plaintiff, recover of the mayor, aldermen, and commonalty of the city of New York, the defendants, the sum of five hundred and forty-one dollars and fourteen cents, the

Macomber *a.* The Mayor, &c., of New York.

amount claimed with interest, with thirteen dollars and fifty-seven cents costs and disbursements, amounting in the whole to the sum of five hundred and fifty-four dollars and fifty-seven cents. Filed, Dec. 13, 1859. Geo. T. Maxwell, clerk."

The judgment-roll consists of the summons; the complaint, with its verification; the notice of appearance from Mr. Busteed; the statement and notice for ascertaining and adjusting the amount, served the 8th of December, for the 13th of that month; the affidavit of service of that statement and notice upon Mr. Busteed; the statement for judgment, affidavit of no answer, or demurrer, *or notice of appearance* having been received, and the judgment in the form above stated.

The comptroller of the city now applies to vacate the judgment, or to have its execution suspended, and the defendants permitted to defend the action. His application, sworn to on the 5th of January, 1860, is made under the 5th section of the act entitled, " An Act to enable the Supervisors of the City and County of New York to raise money by tax." That section provides (*Laws of* 1859, 1127, ch. 489) that " whenever the comptroller of the said city (New York) shall have reason to believe that any judgments now of record against the mayor, aldermen, and commonalty of the city of New York, or which may hereafter be obtained against them, shall have been obtained by collusion, or founded in fraud, he is hereby authorized and required to take all proper and necessary means to open and reverse the same, and to use the name of the said mayor, aldermen, and commonalty, and to employ counsel for such purpose."

1. With respect to the question raised as to the constitutionality of the fifth section now proceeded under, it is sufficient to observe, that no court has a right to declare a legislative act unconstitutional, unless it is glaringly so; that a judge at special term, upon a collateral motion in a cause, would evince great temerity who should attempt it; that it may at least be well doubted whether this provision is a local or private bill within the 16th section of article 3 of the Constitution of 1846 (5 *N. Y.,* 285; 16 *Ib.,* 58); and that the power of the Legislature to alter the charters of public corporations without their consent, provided rights of property are not affected, cannot be doubted, unless, as is shown in the same opinion, and con-

firmed by the Court of Errors, a constitutional restriction has not been observed in making such alteration. (People *a.* Purdy, 2 *Hill*, 31; 4 *Ib.*, 385, per BRONSON, J.)

2. If there is repugnancy between the devolution of the power to represent the Corporation to the comptroller in this section, and the provision of the charter (§ 26) vesting the charge of all the law business of the Corporation in the law department, either the charter is in this particular legally modified by the act, or the written consent of the present counsel obviates the objection. This court has held, at general term, that the corporation counsel may employ other counsel, and authorize attorneys to appear and represent the interests of the city. That has been done in substance here. (Mayor, &c. *a.* Exchange Fire Ins. Co., at Special Term, 9 *Abbotts' Pr.*, 380; S. C., 17 *How. Pr.*, 380; at General Term, *MS.*, July, 1859.)

3. If I construed the fifth section as the plaintiff insists it must be, in the manner urged very fully in the second point of Mr. Field, in Sharp *a.* Mayor, &c.,—that the comptroller must establish fraud or collusion, or his application must fail,—I should be greatly embarrassed. I should doubt whether a step could be taken by the court, on the naked allegation of the officer of his belief that collusion or fraud existed; and that doubt would be increased, when such belief is met by the explicit denial of either the plaintiff or his attorney.

But I do not so understand the enactment in question. I consider that it was intended to operate, and does operate, to confer upon another of the city officers the authority ordinarily resting in the officer of the law department—to interpose in an action, though after judgment; and, under certain conditions, to take every legal step in relation to the judgment which would be taken by the ordinary officer, the attorney, or counsel on the record, or by the client, the Corporation itself. This must be done, under and subject to the law and the rules, which apply to similar applications in the usual course of an action between individuals; and as a necessary consequence from these views, the comptroller may place himself before the court precisely upon the grounds which an individual suitor may take, when he comes to open a judgment under the 174th section of the Code.

In this view, the clause of the enactment requiring an affi-

davit of belief as to fraud or collusion, is restrictive of the power of the new officer. He may not interfere, except a case is made out to him warranting a presumptive conclusion of the fraud. The law then gives faith to his public and official station, so as to render his belief sufficient ground for his intervention; but that places him only, yet it does place him fully, in the position of an ordinary party seeking to open a judgment. His action will not then be what the Scotch law calls a vicious intromission in a suit; but when he fulfils the statutory condition of interfering at all, he is to pursue, and is entitled to take, all the legal measures and means open to others.

The 174th section of the Code gives discretionary power to the court, at any time within one year after notice of a judgment, and upon such terms as may be just, to relieve a party from it, when it has been taken against him through his mistake, inadvertence, surprise, or excusable neglect. Besides this, the general right to vacate a judgment for the irregularity of the party obtaining it, is undoubted. (8 *How. Pr.*, 312; 2 *Rev. Stat.*, 359, § 2; *Code*, §§ 468, 469; 2 *Sandf.*, 641.)

There are some irregularities in the judgment and judgment-roll produced.

It states the judgment as of the 13th of December, 1859, upon service of a summons personally on the 16th of *December*, 1859. The affidavits show service on the 15th of *November*, 1859. The appearance on the 16th of November is in the roll.

But what is of more importance, there is nothing in the roll showing personal service of summons or complaint at all.

By section 216 of the Code, judgment may be had, if the defendant fail to answer, as follows: In an action for the recovery of money only, the plaintiff may file with the clerk proof of personal service of the summons and complaint, and that no answer has been received. The clerk shall thereupon enter judgment, &c.

By section 281, unless the party or his attorney shall furnish a judgment-roll, the clerk, immediately after entering the judgment, shall attach together and file the following papers, which shall constitute the judgment-roll: In case the complaint be not answered by any defendant, the summons and complaint, or copies thereof, *proof of service*, and that no answer has been received, the report, if any, and a copy of the judgment.

The 282d section provides that on filing the judgment-roll upon a judgment, directing, in whole or in part, the payment of money, it may be docketed with the clerk of the county where it is rendered, and in any other county, &c. ; and then, by section 287, when the execution is against the property of the judgment-debtor, it may be issued to the sheriff of any county where the judgment is docketed.

Thus it seems clear, that a judgment-roll must be perfected as prescribed, then the judgment be docketed, and the execution against property can only issue upon a docketed judgment. If the roll does not contain proof of service of summons and complaint, or of summons in one case, the docket and the execution would seem to be irregular at least.

I am not prepared to say, that the recital in the judgment, altered by the clerk, of the summons having been personally served on the defendants, may not raise a presumption of the fact, so as to sustain the judgment proper. But the serious difficulty as to the judgment-roll and the execution remains. There would be ground to set aside the execution; and then the court must be applied to for an amendment of the roll, assuming that the proof of service of summons and complaint was actually filed under section 246, and showed service on the 15th November. The provision of the Revised Statutes (2 *Rev. Stat.*, 425, § 9), that no process, pleading, or record shall be amended or impaired by the clerk or other officer of any court, or by any other person, without the order of such court, or of some other court of competent authority, is, I apprehend, in full force. The plaintiff would then be driven to an application.

That the plaintiff would have relief from these irregularities upon such an application, cannot be doubted. Section 176 of the Code seems intended to cover the enumeration in the Revised Statutes (2 *Rev. Stat.*, 424, § 7) of all the imperfections and omissions, which were provided for in the old statutes of jeofails. (See *Bing. on Judg.*, 74–78; *Law Lib.*, 13, 31.)

Without entering into the learning as to when misprisions and omissions could be disregarded, and when recourse to the court to correct them was necessary, it is sufficient to observe that, by section 8 of the Revised Statutes (2 *Rev. Stat.*, 425), the omissions, imperfections, defects, and variances in the 7th section enumerated, shall be supplied and amended by the court.

An application to the court then was indispensable in those cases, and subdivision 13 of section 7 is precisely the case before me.

But in section 8, the important clause is inserted, that the omissions, &c., and all others of a like nature, are not to be " against the right and justice of the matter in the suit;" and in the Code (§ 176), those are to be disregarded which do not affect the substantial rights of the adverse party.

I think I am justified in saying, that in applications of this character to the court, the merits of the case,—the fact whether the plaintiff, who seeks assistance, shows a clear or a doubtful case, may not be wholly disregarded even when a trial has been actually had; and that where there has been a default, and an application is then made for the interference of the court, the plaintiff subjects himself to an inquiry into the nature and justice of his claim. It deserves notice on this point, that it was not until 4 and 5 *Anne,* ch. 16, § 2, that the statute of jeofails was made applicable to judgments by default at all. (*Bing. on Judg.,* 77.)

And through all the cases on this subject, a marked distinction is traceable between judgments had after trial and judgments by default; and this, whether the plaintiff applies to remedy a defect in his judgment, or the process which led to it, or the defendant applies to open and set it aside. Nay more, it is the every-day practice to open a regular default, upon terms more or less stringent; and so it has long been. (*Bing. on Judg.,* 22.)

In Levy *a.* Joyce (1 *Bosw.,* 622), through an excusable omission, and under very special circumstances, a claimant upon a fund who had omitted to produce his proofs at a regular trial, where he had the opportunity to do so, was allowed to come in. The establishment of his claim might have impaired the prior-ities of other parties upon the fund in suit.

In Bell *a.* Kelly (2 *Harr. N. J.,* 270) there was a judgment by default, and some proceedings taken to amerce the sheriff. There was then an application to open the judgment, on an affidavit that the defendant had been an indorser on several notes, and supposed the one sued upon was genuine, which he had now reason to believe was forged.

Mr. Justice Bronson, in Fort *a.* Bard (1 *N. Y.,* 43), in which

it was decided that an order opening or refusing to open a judgment regularly obtained was not appealable, states the rule thus: When the time (to appear and defend) has expired, and his default has been entered, the legal right is at an end; and if he wishes to be heard, he must ask it as matter of grace and favor. The motion for leave to plead or answer, is addressed to the discretion of the court, and may be granted or refused, as the ends of justice may require. "It should not be granted unless the party has a good defence on the merits, and the omission to plead or answer in due time was the result of accident or mistake, without any culpable negligence on his part." (See, also, Fake a. Edgerton, 6 *Duer*, 653.)

Another question to be considered is, whether the defect is of such a character as to render void, or in any way affect the judgment or execution, or both.

There are several cases which bear upon this point, which should be noticed.

In Renouil a. Harris (2 *Sandf.*, 641), it was held that the omission of the clerk to attach the answer to the roll was not enough to vitiate a judgment and execution. It was not the plaintiff's fault. The roll was not a nullity, and could be sustained by directing the original answer, or a copy, to be attached as of the date when the roll was filed. A copy was, in fact, attached before the motion was brought in. (Clute a. Clute, 4 *Den.*, 241, is cited.)

In Cook a. Dickerson (1 *Duer*, 679), the clerk had omitted to attach to the roll the verdict or copy of the minutes taken at the trial. He filed the roll without doing this, but subsequently inserted it. It was held, on a motion to set aside the judgment and execution, that section 176 applied, and Renouil a. Harris (*supra*) and Clute a. Clute (*supra*) were relied upon.

In each of these cases, the fault was that of the clerk. In the present, the plaintiff's attorney had the proof of service, and was the party to furnish it. It is not shown, even upon the affidavits, that such proof was ever filed with the clerk.

But Clute a. Clute appears to me to hold this: "Until the record of a judgment was filed," under the old system, "an execution issued thereon was not only irregular, but, as was observed by Chief-justice Savage, it is a mere nullity." (5 *Wend.*, 109.) But on filing the record it ceases to be a nulli-

ty, and *thenceforth* it becomes effective against the defendant therein.

In Butler *a.* Lewis C. P. (10 *Wend.*, 541), the subject under the provision of the Revised Statutes,—declaring that no judgment shall be deemed valid, so as to authorize proceedings thereon, until the record shall have been signed and filed,—was carefully examined, and the cases where amendment or entry or filing, *nunc pro tunc*, had been permitted, were discussed. The court says: "To allow an amendment in this case *nunc pro tunc*, so as to save the lien of the judgment when docketed, a priority of executing, would be overlooking all the provisions of the Revised Statutes, and establishing a precedent that must sustain every judgment, when a paper in the form of a record has been filed by the attorney and docketed, disregarding every injunction of the statute."

In the American Exchange Bank *a.* Smith (6 *Abbotts' Pr.*, 1), it was held, that where judgment was entered upon failure of the defendant to answer, it was not essential to the regularity of the judgment that the roll should show on its face that the note which was sued upon was produced to the clerk, and that he assessed the amount due thereon. The Code did not require that this should appear by the record itself.

In Townshend *a.* Wesson (4 *Duer*, 342), the subject was fully discussed. The question arose upon a title made by a sheriff's deed, and that involved the sufficiency of the judgment and its docket. The absolute necessity of a judgment-roll constituted as the Code prescribes, to render a docket proper, and to bind lands, and the illegality of an execution issued without such a docket, is plainly and fully declared. And the provision of the Revised Statutes before cited, as to the necessity of filing a record of judgment to render valid any proceedings, is considered not to be repealed by the Code, or at least the previous rule recognized by the statute.

DUER, J., observes that the Code, however, seems to dispense with any signing of the roll.

In Thomas *a.* Tanner (14 *How. Pr.*, 426), Justice Harris speaks of the roll containing evidence of the service of the summons in case of a default, as if it were a matter of course. This was a case of setting aside a judgment for an irregularity, which could have been amended, in order to give the other party an

opportunity to appeal, as justice seemed to warrant. (See Van Benthuysen *a*. Lyle, 8 *How. Pr.*, 312.)

The fact of an appearance having been given by the attorney, and thus appearing on the roll, cannot make a difference. The 246th section is, that the proof of service is to be filed upon *the failure to answer;* and section 281 is, "if the complaint *be not answered*." An appearance is not noticed. The provision is equally inoperative whether an appearance has been had or not. The voluntary appearance under section 139 is equivalent to personal service of the summons, for all purposes of jurisdiction, and cures previous defects in process (6 *How. Pr.*, 439); but it cannot dispense with the observance of the provisions in question.

This appearance may remove, or enable the court to cure, the error of a judgment on the 13th of December, reciting a service on the 16th of December. This would give on the record itself something to amend by. And ·thus the case may be brought within the authorities distinguishing between irregularities, which do not affect the judgment proper, entered in the judgment-book under section 280, and irregularities rendering the subsequent proceedings invalid. (Gilmartin *a*. Smith, 4 *Sandf.*, 684.)

This case (which was approved by all the judges) settles several points pertinent to that before me.

The judgment should have been entered before the costs were adjusted. Here it was done on the same day. The judgment should be entered on the judgment-book. Then the costs should be adjusted upon the notice of two days, and shall be inserted by the clerk in the entry of judgment (§ 311). Such irregularities, as adjusting the costs without notice, and then entering up judgment, would not warrant the setting aside the judgment proper; but as the case showed a state of facts making it proper to vacate the whole judgment, and give liberty to answer, it was done.

It remains to ascertain how the case appears upon the merits, as far as they are now presented. The plaintiff, in his ·complaint, alleges that in the month of May, 1857, he was appointed by the defendants as assistant keeper of the corporation yard in Jane-street. The charter of 1857 went into effect on the 1st of May, 1857. (*Laws of* 1857, 874, ch. 446.) It repealed, as I

think, all the previous provisions in the successive amendments of the charter, from the act of April 7th, 1830, to that of June 14th, 1853, which may bear upon the subject. (See section 54.)

The 23d section of this charter is the only one which I believe touches the subject. The provision as to the executive department, called the street department, directs that it shall have, among other things, the care of public buildings and places.

Chapter 4 of the ordinances of 1859, organizes and distributes the powers and duties of officers and bureaus under this provision. Article 1, section 1, declares that the street department shall have the care of the public yards of the Corporation; and by article 11, section 105, the deputy superintendent of repairs and supplies shall have the care of the public yards and storehouses, and may, with the consent of the street commissioner, employ not to exceed two keepers for each of the public yards, whose pay shall not exceed two dollars per day.

Unfortunately, in the useful compilation of the ordinances of 1859, the dates of their original adoption, respectively, are not given. They were submitted in a body in June, 1859. (See Preface.) No doubt this and others had been adopted before.

It is stated in the comptroller's affidavit, that the plaintiff had been removed from his office by the then acting city inspector, in January, 1858; and that his term of office expired under the said city inspector, with the expiration of the term of such city inspector, on the 31st of December, 1858.

It may be that under the 19th section of the charter of 1849, an ordinance has been passed which has given the city inspector power in the matter, and a right to appoint assistants. How such powers could exist after the 1st of May, 1857, or at least after ordinances passed under the charter of 1857, does not seem clear. The revised ordinances of 1845 do not help us.

With the very little light I possess upon this subject, I must be guided by what is sworn to in the affidavit of the comptroller.

That makes a case of an appointment by the city inspector,— of a removal by him, and of the termination of this office, because dependent on that of the inspector who had appointed him, and which took place on the 31st of December, 1858; also, that the plaintiff has never done any service since the 5th of January, and has been engaged in other employments.

This, at least, would throw great doubt upon the plaintiff's right to recover.

The order to show cause does not specify the grounds of irregularity to which I have alluded (*Rule* 39), and the plaintiff, in strictness, had a right to have them specified, that he might meet them. The defendants are, however, entitled to renew the motion in such a case as the present. . (Bowman *a.* Sheldon, 5 *Sandf.*, 657.) If the plaintiff thinks he can gain any thing by it, this will be the course. The application will be denied without costs, with liberty to renew it. Otherwise it will be granted.