HIRAM H. DORR, RESPONDENT, v. THE CITY OF TROY, APPELLANT.

MARTIN KELLY, RESPONDENT, v. THE SAME, APPELLANT.

*Justices' judgment —production of docket, necessary.*

Section 248 of 2 R. S., 270, providing that the proceedings in any cause, had before a justice of the peace, may be proved by his oath, does not authorize a judgment recovered before him to be established by his parol testimony as to the proceedings had before him, without the production of his docket; in such case the judgment can only be proved by the production and verification of the docket itself.

APPEAL from a judgment in favor of the plaintiff entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justices before whom the action was tried, in each of the above entitled actions.

*R. A. Parmenter*, for the appellant.

*James Lansing*, for the respondents.

224 DORR v. CITY OF TROY.

BOARDMAN, J. :

The assignors of plaintiff were appointed street inspectors. March 8, 1870, by the vote and appointment of the common council. By the charter, then in force, the common council were commissioners of highways for the city, and were authorized to pass ordinances in respect thereto, and to appoint persons to care for the streets, etc. In pursuance of such authority, in 1838 and 1869, ordinances were passed providing for the appointment, annually, of a city commissioner and street inspectors, who should hold office, *unless sooner removed*, for one year, their compensation to be fixed by the common council, and to be paid quarterly. On the 8th of March, 1870, the compensation of street inspectors was fixed by resolution at $600 per annum. Their duties were also prescribed by ordinance. Such city commissioner and street inspectors became officers of said city. They represented the city in the matter of highways. They were the *alter ego* of the city in matters pertaining to highways, as a superintendent of a railroad company is of such company. In May, 1870, the charter of the city was amended, and by title 2, section 6 of chapter 598, the offices of city commissioner and street inspectors were abolished. From the time when the act took effect no such offices existed. Section 2, title 3, provides for the re-organization of the common council after the next charter election in 1871, and then adds as follows : " The first meeting of the common council for organization under this section, for the year 1870, shall be the first meeting after the judicial election (May, 1870), and at that meeting all city officers, not created by this act, shall be chosen." At such meeting the duties, theretofore discharged by plaintiff's assignors, were imposed upon other persons and officers, of which such assignors had notice as well as that their services were no longer required or wanted. No services were thereafter rendered by them.

When these persons accepted office, it was with reference to the power of the Legislature to terminate the existence of the office at its pleasure. (1 Dill. on Corp., §§ 168, 169.) When the office was abolished, the right to pay ceased. (*Connor* v. *Mayor* 5 N. Y., 285.)

By the ordinance under which the inspectors were appointed the common council reserved the right to remove at any time.

It was not an absolute appointment for a year, and the city could not have compelled performance of their duties for a year at the peril of damages for a failure. The appointment was not, therefore, a contract for a year. Resolutions or ordinances fixing salaries are not, in the nature of contracts, with officers. (Dill. on Corp., § 170, and note and cases cited.) The salary may be diminished or entirely taken away. As the officers had no part in fixing the salary they cannot prevent its modification. So, by the notice that their services were no longer wanted, they were, in legal effect, removed from office, and were no longer entitled to pay for services.

But it is claimed by the respondents that a judgment by default has been recovered by the several assignors against the city for the second quarter's salary, and that such judgment bars or estops the defendant from denying its liability. It appears that such judgments were recovered by collusion with the mayor of the city, if any judgment was, in fact, recovered. The whole proceeding was discreditable, if not fraudulent. No judgment appears on the justices' docket. No entry was ever then made. The justice testifies that all the papers and proceedings are lost; that Edwards, one of the assignors, brought an action for three months' services against the defendant; that he rendered a judgment against the city. He can not, or does not, give the date, the time when the service were rendered, the office held by Edwards, the amount of damages or costs. The only entry made was "*upon separate sheets of paper.*" No entry was then or has ever been made in the docket. Upon such proceedings and evidence it was claimed by plaintiffs the defendant was estopped from interposing its defence, and that such result was conclusive upon every matter determined, and upon every matter which might have been determined. This position was sustained by the court below. Whether the same subject matter was involved, whether the parties were the same or privies, or whether such a determination, if valid, would have such effect, will not be discussed, since counsel for the defendant has not presented such questions for consideration.

But we think the proof, by parol, of such a judgment should not have been admitted. The Revised Statutes (2d vol., 269, 270, §§

245–248) prescribe how a justices' judgment may be proved (1) : by the docket itself ; (2) by a transcript from the docket ; (3) by the oath of the justice. These are the only modes of proof, except in case of the death or absence of the justice. The first and second modes were impossible, because there was nothing in the docket respecting the matter. The plaintiffs attempted to avail themselves of the third method. But that can only be done by the production and verification of the docket. He cannot give parol evidence of the proceedings before him without the production of his docket. (*Boomer* v. *Laine*, 10 Wend., 525.) Judge NELSON says, the language of the statute means, " the docket may be proved by the justice  *  *  *  by the production of the docket verified by the oath of the justice, and not that the justice may give parol evidence of the contents of the docket." There is no authority for making anything, except the docket, evidence. (*Pratt* v. *Peckham*, 25 Barb., 195.)

Various cases are found deciding that the justice may make the entry in his docket, of the judgment given, provided it was entered in due time in his minutes, and that the judgment so entered is good. (*Hull* v. *Tuttle*, 6 Hill, 38; *Walrod* v. *Shuler*, 2 N. Y., 134; *Fish* v. *Emerson*, 44 id., 376.) But, in all such cases, the judgment was, in fact, entered in the docket before the question came up for review, and it was held that such subsequent entry was sufficient. In the case at bar, no such entry has been made, the docket contains no statement whatever, and proof of, or transcript from, the docket furnishes no such evidence as is required by the statute. Great indulgence has been and should be extended to proceedings before justices' of the peace. But it was never intended, we submit, that entries of judgment made upon loose sheets of paper, having nothing of permanence, subject to being changed or modified at pleasure from day to day, easily destroyed or lost, should be the basis of evidence in a collateral proceeding of the existence of a judgment.

We are satisfied that plaintiffs assignors were not justly entitled to pay for services, after their offices had been abolished by the Legislature and they had ceased to be in the employ of the city. The alleged judgments were obtained by collusion, and for that reason were entitled to no respect. The evidence of such judgments

was not such as the statutes require, and consequently the judgments were not so proved as to bar or estop the defendant from interposing its defence.

For all these reasons, we think, the orders and judgments under review should be reversed, and new trials granted, costs to abide event.

LEARNED, P. J., and BOCKES, J., concurred.

Judgments and orders reversed, new trial granted, costs to abide event in both cases.