NOTE.—Attention is called to foot-note of reporter on page 22 of Howard's Practice Reports, volume 28, as being an appropriate reminder to the legislature of the propriety and justice of passing a law to compensate counsel for such services.—[ED.

## SUPREME COURT.

### THE PEOPLE *ex rel.* WILLIAM MURRAY *et al.* agt. JOHN McCLAVE.

*New York (city of)— Police relief fund — Constitutional law — Laws of 1885,. chapter 486, establishing a life insurance fund for police department is constitutional — Duty of treasurer of board of police commissioners to deduct two dollars from the salary of each policeman.*

The general intent of the act (*chapter* 486, *Laws* of 1885) was to establish a life insurance fund for the police department and, so far as this act relates to members of the police force, it is the duty of the treasurer of the board of police commissioners to deduct a sum equal to two dollars per month from the salary of each member of the police force, whether such deduction be assented to or not.

Such deduction may be made in the case of each member or employee of the department, other than the said force, who shall desire to avail himself of the privileges and provisions of the act, and also in the case of members of the Police Mutual Aid Association, who are in good standing and who shall desire to contribute to the said fund.

*Held*, also, that the act in question is not unconstitutional, as depriving the members of the police force of their property without due process of law, nor as being a local act and decreasing the allowance of a public officer during the term for which he was appointed.

*New York, Chambers, December*, 1885.

*Francis C. Barlow* and *Stickney & Shepard*, for the relators; *M. Shepard* and *Charles W. Wetmore*, of counsel.

*E. Henry Lacombe*, counsel for the corporation, for the respondent; *David J. Dean*, of counsel.

LAWRENCE, *J.*—This is an order to show cause why a pre-emptory mandamus should not issue against John McClave, treasurer of the board of police of the city of New York, requiring him to deduct for the month of September, 1885, and for every succeeding month, two dollars from each monthly pay otherwise due or payable by him as treasurer to sergeant Alexander B. Wartz and patrolmen Francis Caddell and James Currie, as sergeant and patrolmen, and also from the monthly pay otherwise due or payable by him as treasurer aforesaid to each and every member of the police force of the police department of the city of New York, as such; and also and separately why a peremptory mandamus should not issue against the said John McClave, treasurer as aforesaid, separately, requiring him to pay George W. Dilks, treasurer of the board of trustees of the police fund of the city of New York, all moneys in the hands of said John McClave, as such treasurer, which have been during the time and since the passage of said act, and until the 10th of September, 1885, deducted by him, acting under the provisions of the act, chapter 486 of the Laws of 1885, from the pay of the members of the police force of the city of New York.

The order to show cause was issued upon the affidavit of William Murray, the superintendent of police of the city of New York, which set forth that Thomas Byrnes, Henry V. Steers and George W. Dilks are the inspectors, and the only inspectors, of the police department of the city of New York, said city having, according to the last census, a population exceeding one million; that the three said inspectors and said Murray, as superintendent aforesaid, compose the board of trustees of the police relief fund of the city of New York; that said board has been duly organized by choosing from their number William Murray, the deponent, as chairman and George W. Dilks as treasurer, and by appointing sergeant Washington Mulien as secretary. It is then set forth that the respondent, John McClave,

is the treasurer of the board of police; that, acting under the authority of chapter 486 of the Laws of 1885, said McClave, as treasurer of the board of police, has since the passage of the act and until the 30th of September, 1885, deducted from the pay of the members of the police force, two dollars per month for each member of the police force and also for each member or employee of the department of police in the city of New York, other than the said police force, who has desired to avail himself of the privileges and provisions of said act.

The sum thus received by said McClave is alleged to have amounted on the 1st of September to $17,636. It is also alleged that demand has been made upon McClave as such treasurer to pay the same to the treasurer of their said board of trustees of the police relief fund, but he has refused so to do. It is also alleged that McClave has refused to deduct, pursuant to the provisions of said act, the sum of two dollars in each case from the pay, otherwise due and payable by him as such treasurer for the month of September to one Alexander B. Wartz, a police sergeant and a member of the police force, and to one Francis Caddell and to one James Currie, who are patrolmen and members of the said force; the said Wartz, Caddell and Currie having refused the said deductions to be made from their pay; and that the said McClave has refused and now refuses to make such deductions, and has notified the deponent and the said inspectors, his associates or others forming the board of trustees of the police relief fund, &c., that he declines, and will decline to make such deductions of two dollars from the monthly pay otherwise due, &c., to members of said police force who shall or may object to such deduction being made.

Certain correspondence which has passed between the said McClave as such treasurer and the trustees of the police relief fund is appended to the affidavit of superintendent Murray. No affidavits were read on the part of the respondent, but an opinion of the counsel to the corporation, bearing date July 2, 1885, was submitted, in which the learned counsel arrives at the conclusion that the law does not compel the board of police

The People *ex rel.* Murray agt. McClave.

commissioners to deduct two dollars per month from the salary of each member of the police force; but that the act does, however, authorize two dollars a month to be deducted from the pay of such members of the police force as desire to avail themselves of the privileges of the act, and also from the pay of such members or employees of the department other than the said police force, who desire to avail themselves of the privileges of said act. On the argument, the application for a mandamus to compel Mr. McClave to pay over the said sum of $17,136, referred to in superintendent Murray's affidavit, was abandoned for the present, and the sole and only question which was discussed was whether, as to members of the police force, of the police department, the deduction of two dollars a month under the act aforesaid can be made without their consent.

By chapter 486 of the Laws of 1885, entitled "An act to create a relief fund in the police department in all cities of this state having, according to the last census, a population exceeding one million," it is provided that "the superintendent of police and the inspectors of police of the police department in all cities of this state having, according to the last census, a population exceeding one million, and their successors in office, are hereby constituted a board of trustees of the police relief fund created by this act."

After providing for the organization of such board, it is provided that the board of trustees "shall have charge of and administer said fund, and from time to time invest the same, or any part thereof, as they shall deem most beneficial to said fund, and are empowered to make all necessary contracts and take all necessary and proper actions and proceedings in the premises and to make payments therefrom in pursuance of this act."

Said trustees are also to establish rules and regulations for the administration of the police relief fund, and are to report annually to the board of police, &c., the condition of the same.

Section 2 provides that "the police relief fund shall consist of a sum of money equal to two dollars per month for each member of the police force of said department, and also for each member

or employee of said department other than the said police force, who shall desire to avail himself of the privileges and provisions of this act, and also for members of the Police Mutual Aid Association of the said department, who, at the time of the passage of this act, are in good standing therein and who shall desire to contribute to the said fund, to be paid monthly by the treasurer of the board of police or commissioner of police of said department to the treasurer of the board of trustees of the police relief fund created by this act, from moneys deducted from the pay of such members of said force or members or employees of said department, and the treasurer of the board of police or commissioner of police of said department is hereby authorized and directed to make such deduction from the pay of the members of said police force as herein provided."

By the third section of the act "members of the said police force, and members or employees of said department other than the said police force, who may hereafter resign or be dismissed or retired therefrom, and members of the said Police Mutual Aid Association, who are in good standing at the time of the passage of this act, may avail themselves of the privileges and provisions thereof by making a monthly payment of the sum of two dollars to the treasurer of said relief fund; but any such person not in the employ of the said police department; or a member thereof, who shall fail to pay the said sum of two dollars within thirty days after the same shall have become due, shall forfeit all claim to any portion of said fund or benefit to be derived therefrom."

The fourth section of the act provides that "upon the death of any member of the police force of the said department or member or employee thereof, other than the said police force, contributing to the said fund, &c., there shall be paid by the trustees of the said fund to the person or persons designated, in writing, by such member, employee or person contributing thereto, or if no person or persons have been so designated, then to the widow, or if there be no widow; then to the legal representatives of such deceased member, employee or person, the

The People *ex rel.* Murray agt. McClave.

sum of $1,200 out of the moneys so deducted, withheld or contributed."

It is contended by the relators that the general intent of the act was to establish a life insurance fund for the police department, and that so far as the act relates to members of the police force, it is the duty of the respondent to make the deduction of two dollars per month from their pay, whether such deduction be assented to or not. From my examination of the statute I am of the opinion that the relator's position in this respect is sound. It seems to me that the true construction of section 2 is that the treasurer of the board of police commissioners must deduct a sum equal to two dollars per month from the salary of each member of the police force, and that such deduction may be made in the case of each member or employee of the said department, other than the said force, who shall desire to avail himself of the privileges and provisions of the act, and also in the case of. members of the Police Mutual Aid Association, who are in good standing, and who shall desire to contribute to the said fund.

I also think that the relator's counsel is right in contending that the words "*who shall desire to avail himself*" and "*who shall desire to contribute to said fund*" are limited to members or employees of the department and members of the Police Mutual Aid Association *who are not members of the police force.* That the legislature intended to make a distinction between a voluntary contribution and a compulsory deduction is, I think, apparent from the provisions of section 4, in which, in describing the amount to be paid in cases of death, it is directed that the sum of $1,200 shall be paid out of the moneys so deducted, withheld or contributed. There is a clear distinction here between a contribution and a deduction or withholding. The contribution in my opinion refers to the voluntary payment to be made by those attached to the department or the Police Mutual Aid Association, who are not members of the active police force, and not to the deduction of the sum which "the treasurer of the board of police is authorized and directed to

make from the pay of the members of the said police force as
herein provided." I do not deem it necessary to go minutely
into the verbal construction of section 2, nor to consider whether
if a comma had not been inserted between the word "force"
and the words "who shall desire, &c.," the intention of the legis-
lature to discriminate between a compulsory deduction from
the pay of a member of the force, and a voluntary contribution
from the other persons attached to the department therein
referred to, would have been more clear.

In construing this act we must take into consideration its
whole frame work and all of its language. If the intention of.
the legislature was to provide for a mere voluntary life insur-
ance fund, by the members and employees of the police depart-
ment, it would hardly have seemed necessary to pass the act at
all, as the members of the force and the other employees could
have formed such a fund by their own voluntary agreement. It
can readily be seen that public policy would dictate that the
active members of the force, who are exposed to accident and
danger in the performance of their duties, would need protec-
tion for their families in case of accident to them; and this
seems to me to be a good reason, and one that, it is apparent
from the language of the act, impressed itself upon the legisla-
ture, for making a distinction between the active members of
the force and the other employees of the department. Public
policy dictated that, as to the former, a certain fund to provide
for their families in case of their death should be created, and that
in the case of the latter it should be provided, if the employees
so desired and were willing to make the contribution permitted
by the act. But it is said that the act in question is uncon-
stitutional if the construction is given to it, to which I have
adverted, because it deprives the members of the police force of
their property without due process of law, and also because the
act is a local act, and that it decreases the allowance of a public
officer during the term for which he was appointed. I cannot
concur in the validity of these objections.

It was long ago held in the case of *Conner* agt. *Mayor, &c.,*

*of N. Y.* (1 *Selden, p.* 285), that the prospective salary or emoluments of a public office are not the property of the officer, nor the property of the state; that they are not property at all; that they are like daily wages unearned and which may never be earned; that the right to the compensation grows out of the rendition of the services, and not out of any contract between the government and the officer, that the services shall be rendered by him (*See opinion of* RUGGLES, *J., at page* 296, *and opinion of* FOOT, *J., pp.* 299 *and* 300). The authority of that case has not, I believe, been questioned, but, on the contrary, it has been approved and followed by the court of appeals in many other cases.

In *Smith* agt. *The Mayor* (37 *N. Y., p.* 518), HUNT, *Ch. J.*, in delivering the opinion of the court, said: "An office in this country is not property, nor are the prospective fees of an office the property of the incumbent," and, after citing *Conner* agt. *Mayor* (1 *Selden,* 285), he continues: "The incumbent cannot sell his office or purchase it, or encumber it. It will not pass by an assignment of all his property, nor will such assignment affect his right to prospective fees. \* \* \* The legislature may diminish or abolish the fees at pleasure, or may render it a salaried office."

The corporation of the city of New York may do the same when it fixes the rate of compensation. It is only in the cases of a few of the state offices that the constitution prohibits such interference" (*See also The People* agt. *Stevens,* 51 *How. Pr. Rep.,* 153; *People* agt. *Roper,* 35 *N. Y., p.* 639; *People* agt. *Devlin,* 33 *N. Y., p.* 288).

It is claimed that the decision of the court of appeals in the case of *The People ex rel. Ryan* agt. *French* (91 *N. Y.,* 265), sustains the view of the respondent's counsel. I do not think so. DANFORTH, *J.*, in delivering the opinion of the court in that case, says: "The cases (*Conner* agt. *The Mayor,* 5 *N. Y.,* 285; *Smith* agt. *The Mayor, id.,* 518; *Dolan* agt. *The Mayor,* 68 *id.,* 274, *and McVeany* agt. *The Mayor,* 80 *id.,* 185) cited by the respondents have no application to the question before

us. None of them decides that an incumbent of a public office entitled to an annual salary can be deprived of any part of it by an authority which did not fix the salary, and which is prohibited from doing so, or that any part of it can be withheld from him by reason of his involuntary disability to perform the duties of such office." In the case of *Ryan*, it was not decided that the legislature, which fixed the salary of the members of the police court, could not change or reduce that salary during his continuance in office. The point there was, whether the board of police could, by a mere rule, prescribe that members of the force should receive one-half or one-fourth pay for lost time during illness, the salary of the police having been fixed by the legislature, and it was held that the rule of the board was invalid.

It will be observed in examining the opinion of the court of appeals in the *Ryan Case*, that the cases of Conner, Smith and other, above referred to, are not overruled, and that it is nowhere held that the legislature cannot alter or decrease the salary of a public officer which they themselves have fixed, there being no express provision in the constitution against the diminution of such salary. It is said, however, secondly, that the act is a local act, and decreases the allowance of a public officer during the term for which he was appointed, and that it is, therefore, in conflict with section 18, article 3 of the constitution. That section was the subject of examination in the case of *Mangam* agt. *The City of Brooklyn* (98 N. Y., 595), in which it was held that it did not apply to officers receiving fixed salaries, but included only those irregular and uncertain modes of compensating public servants indicated by words of like meaning with fees, percentage, &c.

RUGER, *Ch. J.*, in delivering the opinion of the court in that case, says: "In a proper sense there are no public officers in the state whose compensation may not be increased or diminished by the legislature during their terms of office, except those of governor or lieutenant-governor, the other state officers named in the constitution, judges of the court of appeals, judges of the

supreme court, county judges and surrogates. These are, by the terms of the constitution, expressly exempted from the power of the legislature to diminish, and, in some cases, to increase during their existing terms. &ast; &ast; &ast; All other public officers are subject to the power of the legislature, to increase or diminish their compensation at any time, provided it be done by a general law. In a strict sense, therefore, the language of this section does not apply to the officers in question; for the inhibition is against such legislation by local or private bills only, and not to enactments accomplishing these objects by general law."

The learned judge then goes on in an elaborate opinion to hold that the provisions of the article of the constitution in question do not apply to officers receiving fixed salaries. In that very case the question arose between a policeman or the administratrix of a policeman and the city of Brooklyn. The action was brought for a balance of salary claimed to be due to the intestate, and it was alleged that as the compensation of the patrolman, at the time the intestate joined the police force, was $1,100 per annum, the common council of Brooklyn had no power under a local act, which conferred such authority upon them, to reduce the annual compensation payable to patrolmen from $1,100 to $1,000 per annum. This case seems to be conclusive as to the second point raised by the counsel to the corporation in respect to the constitutionality of chapter 486 of the Laws of 1885. Nor do I think that this proceeding should be dismissed on the ground that it appears that the three members of the police force, named in the moving papers, who have refused to submit to a monthly deduction from their salaries, are not made parties to it.

The object of this proceeding is to compel the respondent, McClave, to perform a duty imposed upon him by the act of 1885. Of course, the rights of the three objecting members of the force cannot be definitely disposed of; but the duty of the treasurer of the police department can be enforced without

their presence. Besides, under the order to show cause, it is asked that the respondent not only make the monthly deductions from the salaries of the three members of the force named therein, but also from the monthly pay otherwise due or payable by him, as treasurer aforesaid, to each and every member of the police force of the police department of the city of New York as such.

Inasmuch as it does not appear that any other members of the police force than those named in the order to show cause have objected to such deductions, the relators are, in my opinion, under the construction which I have given to the act of 1885, entitled to a peremptory mandamus, directing the respondent to make such deductions.

Let an order be entered herein on two days' notice.