THE PEOPLE, ex rel. JOHN RYAN, Appellant, *v.* STEPHEN B. FRENCH et al., Commissioners, etc., Respondents.

A patrolman is an officer of the police force of the city of New York, and the salary referred to in the city charter of 1873 (§ 43, chap. 335, Laws of 1873), is incidental to the office, to which, by reason of his title to the office, the incumbent acquires a right.

While, therefore, such officer may be removed for cause (§ 41), or retired from office for disability incurred in the performance of duty (§ 42), he is entitled to his entire salary as long as he possesses the title to the office.

The authority conferred by said charter (§§ 41, 50), upon the board of police, to provide by rules and regulations for the government of the police department and the discipline of the subordinates under its control, does not give a right to pass rules or regulations making deductions from the salary of a patrolman while detained from duty by reason of sickness or injury caused by the discharge of his official duty.

The provision, above mentioned, of said charter (§ 42), authorizing the retirement of a patrolman, was not repealed by the act of 1878 (Chap. 389, Laws of 1878), creating a police pension fund.

A continuous practice of the board to make such deductions, however general, cannot control the true construction of the law, or impair the right plainly given thereby.

*It seems* that the provision of the act of 1853 in relation to the police department (§ 8, art. 1, chap. 228, Laws of 1853), providing that policemen "absent from duty in consequence of disease, or injuries contracted in public service, shall receive full pay," has not been repealed.

The history of legislation in reference to the police force of said city given and the various statutes collated.

*People, ex rel. Ryan,* v. *French* (24 Hun, 263), reversed.

(Argued March 13, 1882; decided April 11, 1882. Motion for reargument granted June 20, 1882. Reargued October 23, 1882; decided January 30, 1883.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made March 11, 1881, which affirmed an order of Special Term, denying the application of the relator for a peremptory *mandamus*, requiring defendants, as commissioners, composing the board of police of the police department of the city of New York, to pay to the relator a balance of salary alleged to be due to him as patrolman. (Reported below, 24 Hun, 263.)

The moving affidavits aver that on the 21st day of July, 1876, the relator, being a police officer, while assisting another officer in making an arrest, was assaulted by persons resisting the arrest, and injured. That he continued to perform duty until the 17th of May, 1877. That from the said 17th of May, 1877, until the 1st day of September, 1877, he was unable to perform any duty. That on the 1st of September, 1877, he recommenced performance of duty, and ceased therefrom on the 16th day of October, 1877, since which time he has performed no duty, and has been growing worse and become partially paralyzed. That from the 17th day of May, 1877, to the 1st of September, 1877, and from the 16th day of October, 1877, to the 1st day of July, 1878, he has received half pay, and from the 1st of July, 1878, to the 19th day of May, 1880, one-quarter pay. He seeks, by this proceeding, to compel payment of his salary for the entire time at the full rate, $1,200 per annum. The application was opposed upon the ground that prior to July 1, 1878, by a rule of the police department, half pay for lost time was allowed to members of the police force during illness, when such illness arose from or during the ordinary discharge of police duties, which rule was amended July 1, 1878, by allowing but one-quarter pay, and that the relator's

disability was not occasioned by the injury alleged, but arose from or during the ordinary discharge of duties.

*John D. Townsend* for appellant.   The motion of the relator for *mandamus* should have been granted.   (Laws of 1873, chap. 755, § 7 ; *Swift* v. *The Mayor*, 83 N. Y. 528.)   The relator has never lost his right to the full amount of his salary as a patrolman, and the police department should be compelled to audit his claim and direct payment of it by its treasurer. (Laws of 1873, chap. 335, §§ 41, 42, 43.)   The police board have no power to reduce the salary of an officer, when fixed by law, except when especially authorized so to do.   (*People, ex rel. Satterlee*, v. *B'd of Police*, 75 N. Y. 38.)   The fact that the relator was unable to render services during the period he seeks to recover salary for does not prevent a recovery.   (*Dolan* v. *The Mayor*, 68 N. Y. 274; *Mc Veany* v. *The Mayor*, 80 id. 185.)   The relator seeks the enforcement of a substantial right, and for such purpose he is allowed six years within which to make application.   (*People* v. *Supvrs. of Westchester Co.*, 12 Barb. 446.)   There is no legal authority for the board of police commissioners to curtail the pay of any member of the police force beyond the amounts they are expressly authorized by the different statutes to deduct.   (Laws of 1857, chap. 569 ; Laws of 1860, chap. 569 ; Laws of 1864, chap. 403 ; Laws of 1867, chap. 806, § 22 ; Laws of 1868, chap. 535 ; Laws of 1870, chaps. 137, 382, § 19 ; Laws of 1871, chap. 126 ; Laws of 1878, chap. 389 ; Laws of 1882, chap. 330.)   Incapacity has always been considered by the legislature and treated by the board of police as an " offense " which, upon conviction, might result in dismissal.   (Laws of 1864, chap. 403, § 38 ; Laws of 1870, chap. 137, § 60 ; Laws of 1873, chap. 335, § 55 ; Laws of 1882, chap. 410, § 272 ; Rules B'd of Police Comm'rs, 22, 116, 120.)   Section 42 of chapter 335 of Laws of 1873 was not repealed by chapter 389 of Laws of 1878.   (Laws of 1878, chap. 389, §§ 8, 9, subds. 3, 4 of § 4 ; Laws of 1882, chap. 330, § 4.)   A patrolman on the police force of the city of New York is an officer, and as such, entitled to his

pay so long as he is entitled to his office. (Laws of 1844, chap. 315, art. 3, § 4 ; Laws of 1846, chap. 302, art. 1, § 2 ; Laws of 1849, chap. 436, §§ 3, 4 ; Laws of 1853, chap. 228, art. 1, §§ 1–4 ; Laws of 1857, chap. 569, §§ 6, 7 ; Laws of 1864, chap. 403, § 13 ; Laws of 1870, chap. 137, § 47 ; Laws of 1873, chap. 335, § 43 ; Laws of 1882, chap. 410, § 270 ; *Henly* v. *The Mayor of Lyme,* 9 Bing. 107.) The words " pay at the rate of," in connection with compensation to patrolmen, have not a different meaning from the word " salary." (Laws of 1844, chap. 315, art. 4, § 5 ; id., chap. 436, § 7 ; Laws of 1846, chap. 302, art. 3, § 1 ; Laws of 1853, chap. 228, art. 4, §§ 1, 2, 3 ; Laws of 1857, chap. 569, § 23 ; Laws of 1860, chap. 259, § 63 ; Laws of 1864, chap. 403, § 63 ; Laws of 1865, chap. 592, § 3 ; Laws of 1866, chap. 861 ; Laws of 1867, chap. 481, p. 1258 ; Laws of 1870, chap. 137, § 47 ; Laws of 1873, chap. 335, § 43 ; Laws of 1880, chap. 521, § 2.)

*D. J. Dean* for respondents. The relator, having performed no service during the period for which the salary is claimed, has no right thereto, under the statute which fixes the salary to be paid to members of the police force for their services. (*Conner* v. *Mayor,* 5 N. Y. 285 ; *Smith* v. *Mayor,* 37 id. 518 ; *Dolan* v. *Mayor,* 68 id. 274 ; *McVeany* v. *Mayor,* 80 id. 185 ; *Wood* v. *Mayor,* 12 J. & S. 325 ; *People, ex rel. Ryan,* v. *French,* Gen. Term Sup. Ct., January, 1881 ; *Bowen* v. *Mayor,* Gen. Term Sup. Ct., April 7, 1880 ; N. Y. Daily Reg., April 8 ; *Terhune* v. *Mayor,* Common Pleas, Gen. Term, June 6, 1881.) The board of police are clothed with a *quasi*-judicial power to investigate and decide upon the cause of the relator's disability, and determine whether such disability proceeded from a cause which, under their rules, would justify them in allowing him full pay, one-fourth pay, or no pay. (*People, ex rel. Folk,* v. *Police Comm'rs,* 69 N. Y. 411.)

*Samuel Hand* for respondents. The compensation of the relator, under the statute, is pay for service performed, and is not a salary to which he acquires right by reason of his title to

office, whether service be performed or be not performed. (*Smith* v. *Mayor*, 37 N. Y. 518; *Conner* v. *Mayor*, 1 Seld. 585; *Mc Veany* v. *Mayor*, 80 N. Y. 185; *Wood* v. *Mayor*, 12 J. & S. 325; *Hoboken* v. *Gear*, 27 N. J. L. 265; Laws of 1857, vol. 2, chap. 586, § 23, p. 214; Laws of 1860, chap. 259, § 63, p. 455; Laws of 1864, chap. 403, § 63, p. 932; Laws of 1866, vol. 2, chap. 861, p. 1990; Laws of 1870, chap. 137; Laws of 1873, chap. 353, § 43; *Minto* v. *Mayor*, 3 E. D. Smith, 384; *Talman* v. *Ins. Co.*, 1 Cush. 73, 76; *Beals* v. *Ins. Co.*, 36 N. Y. 527.) The continuous practice of the commissioners who have administered the law since 1857, a period of twenty-five years, acquiesced in by the patrolmen, including the relator, has much force in determining the construction of the act. (*Easton* v. *Pickersgill*, 55 N. Y. 314; *Troup* v. *Haight*, Hopk. 239-268; *People* v. *Dayton*, 55 N. Y.; *Union Ins. Co.* v. *Hoge*, 21 How. [U. S.] 35-60; *In re Female Academy of Sacred Heart*, 6 Hun, 109-113, 114; *Brown* v. *Mayor*, 55 How. 9.) The system of rules by which deductions have been made from the pay of members of the police force for lost time, precisely similar to the deductions made from the relator's monthly allowance, and the constructions of the law by which power to make such deductions was claimed by the commissioners, have received legislative sanction and recognition in the laws. (Laws of 1857, chap. 569, § 24; Laws of 1860, chap. 259, § 66, p. 457; Laws of 1867, chap. 806, § 7, p. 1999; § 66 of chap. 138, Laws of 1870, as amended by § 25 of chap. 383, Laws of 1870, p. 901; Laws of 1870, chap. 383, § 19; Laws of 1871, p. 259, chap. 126; Laws of 1878, chap. 389, p. 467.) An act of the legislature in recognizing the existence or interpretation of a statute is a strong argument against the assertion of the repeal of the statute, and conclusive evidence that no repeal was intended, or that the prevailing construction is erroneous. (*Smith* v. *People*, 47 N. Y. 340; *Rumsey* v. *People*, 19 id. 41; *People, ex rel. Autwater*, v. *Green*, 56 id. 474; *Brown* v. *Mayor*, 55 How. 9; *O'Gorman* v. *Mayor*, 67 N. Y. 495.) This court will not undertake to substitute its judgment upon the theories of medical practitioners

**270**　　　People, ex rel. Ryan, *v.* French et al.　　[Jan.,

Opinion of the Court, per Danforth, J.

in the place of the judgment of the board authorized by the rules of the department, to pass·upon the question of the origin of the relator's disability. (*People* v. *Police Commissioners*, 69 N. Y. 411.) Such a construction of the statutes should not be made as will sustain the relator's claim if they can be reasonably construed or otherwise. (*Smith* v. *Mayor*, 47 N. Y. 340.)

The decision of April 11, 1882, was upon the following opinion :

Danforth, J. The relator's compensation was declared by section 43, of the " Act to reorganize the local government of the city of New York" (Laws of 1873, chap. 335), to be the amount then "legally paid" to such officer, and this amount is also declared to be the " salary and compensation fixed for his office" under that act.

It would then appear that the salary is annexed to, or is an incident of, the office, and the relator entitled to it so long as he possesses the title to the office. It is not only fixed by statute, but the same laws provide (§ 43, *supra*) that the commissioners may "fix the salary and compensation of such clerks other than policemen," whom they may be authorized by law to appoint, and therefore by implication, forbids them to enlarge or diminish the salary of one of the excepted class. (*The People, ex rel. Satterlee,* v. *The Board of Police,* 75 N. Y. 38.)

His title to the office is not denied, and it is conceded that his salary is fixed by statute, but the respondents claim that, as by sickness "he was disabled from rendering service, he thereby lost the opportunity of earning the compensation so provided, and thereafter was entitled to no salary." The argument puts the claim upon a very different foundation from that afforded by the statute. In the one case, service ; in the other, title. Upon principle there would seem to be no reason for this substitution. Nor is it warranted by the statute (*supra*). Under section 41 he might be removed from office for cause, after notice and examination, or under section 42, retired from office for disability incurred in the performance of duty.

1883.]   PEOPLE, ex rel. RYAN, *v.* FRENCH et al.   271

Opinion of the Court, per DANFORTH, J.

Neither of these events has happened to the relator. He is still a member of the police force, but a portion of his salary is denied to him under rules and regulations adopted by the respondents. By these rules, deductions are in effect made from the salary when the policeman is detained from duty by reason of sickness or injury caused by the discharge of police duty.

In the case before us the relator was absent under "sick-leave," made necessary, as he claims and as the case tends to show, by reason of injuries received by him while executing the duties of his office. The action of the commissioners is sought to be justified under section 41 of the act of 1873 (*supra*), which provides that "The government and discipline of the police department shall be such as the board may, from time to time, by rules and regulations, prescribe," and section 50 of the same act, which empowers the board in their discretion, to enact, modify and repeal " orders, rules and regulations of general discipline of the subordinates under their control but in strict conformity to the provisions of this act."

They relate, however, to instances of misconduct, or omission of duty, to those acts of the officer which may be termed offenses, or conduct calculated to impair the efficiency of the force and therefore deserving of punishment, and not to the involuntary failure of the officer to meet the requirements of the law by reason of sickness or disability caused by an unusual effort, or by the performance of duty assigned to him. This is apparent from the context of section 41, which forbids removal of the officer until after written charges. Lighter punishments may be prescribed by rule or regulation, but the extreme penalty only after notice. So long as the relator possesses the office, we think he is entitled to his salary. The cases (*Conner* v. *Mayor*, 5 N. Y. 285; *Smith* v. *Mayor*, 37 id. 518; *Dolan* v. *Mayor*, 68 id. 274; 23 Am. Rep. 168, and *McVeany* v. *Mayor*, 80 N.Y. 185; 36 Am. Rep. 600) cited by the respondents have no application to the question before us. None of them decides that an incumbent of a public office, entitled to an annual salary, can be deprived of any part of it by an authority which

did not fix the salary, and which is prohibited from doing so, or that any part of it can be withheld from him by reason of his involuntary disability to perform the duties of such office. The salary "fixed for his office" has not been paid to, nor has his place been filled by, another. These, or like circumstances were in the cases cited, and in the later one of *Terhune* v. *The Mayor* (88 N. Y. 247).

The conclusion at which we have arrived will not, as the respondents apprehend, interefere with the exercise of power given by section 42, above referred to. The relator holds his office subject to the provisions of that statute, and will have no cause for complaint, if under circumstances to which it applies, he should be retired from office.

The orders of the Special and General Terms should be reversed, and writ of *mandamus* allowed.

The decision of January 30, 1883, was upon the following opinion :

DANFORTH, J. Upon the first argument of the appeal in this case it was assumed by the respondents : *First.* That an annual salary was fixed by law and attached to the office of patrolman. *Second.* That deductions for lost time from the pay of patrolmen were not authorized by any statute ; and that the authority for such deduction depended entirely upon the power conferred upon the board of police to enact, in their discretion, orders, rules and regulations of general discipline (§ 50, chap. 335, Laws of 1873), and upon the rules in relation to deductions for sickness, enacted by the board, as a measure of discipline. *Third.* That section 42 of chapter 335, Laws of 1873, was still in force, and that the relator might be retired from office pursuant to its provisions, and we, in substance, determined that a patrolman was an officer of the police force ; that the salary referred to in the statute (Laws of 1873, chap. 335, § 43), was incident to the office ; that he was entitled to it until removed ; that he might have been removed for cause (§ 41, act of 1873, *supra*), or retired from office for disability incurred in the performance of duty (§ 42, act of 1873, *supra*), and that the withholding of his pay could not be

justified under the authority conferred upon the respondents
(§ 41, *supra*), to provide by rules and regulations for the
government of the police department (see opinion of DANFORTH,
J., April 11, 1882).* It was afterward made to appear that
certain statutory provisions were overlooked by counsel for the
respondents and not called by him to our attention. A reargu-
ment was, therefore, granted, and those and other statutes are
now brought forward. They certainly involve the case in
more difficulty, but we think the learned counsel for the
respondents lost nothing by omitting them from his considera-
tion upon the first occasion.

*First.* It is contended by the respondents that section 42 of
the act of 1873 was repealed by chapter 389 of the Laws of
1878, and that sections 4 and 5 of that act prescribe the only
power to pension or retire a police officer. It is entitled " An
act to create a police pension fund for disabled and retired
policemen in the city of New York." It makes no reference
in terms to the act of 1873, but contains a general repealing
clause of " all acts and parts of acts inconsistent with its pro-
visions." There are in the act no negative words, and it may
be construed so as to be consistent with the provisions of sec-
tion 42 of the act of 1873. By section 42 a patrolman, " if
disabled while in the actual performance of duty," can be
retired from office, but only at his own request, or upon notice
and upon conditions expressed in that section. A special case
is there provided for, and I perceive nothing in the general
language of the act of 1878 (*supra*), which is fatal to it. A dis-
cretionary power is by that act, section 4, vested in the board
of trustees therein mentioned, to grant pensions in certain
cases, but no power is given to retire or dismiss the officer, and
by section 5, any member of the police force who has served
for twenty years or upwards, may, on his own application, or
the certificate of the board of surgeons, be retired from service
and placed on the pension-roll. The prohibition in section 42
of the act of 1873 is not abrogated, nor does section 5 of the

* *Ante*, p. 270.

act of 1878 apply to the case before us.   This difficulty is indeed removed by a later act, amending chapter 389 of the Laws of 1878, passed in 1882 (Chap. 330, § 4, subd. 3), which provides in substance that the board of police may, in its discretion, retire and dismiss from membership on the police force, and thereupon grant pensions, among others, to any member of the police department or force, who, while in the actual performance of duty, and by reason of the performance of such duty, shall have become permanently disabled so as to be unfitted to perform police duty.   This act having been passed after the questions in this case arose, has no application to them, but is important as showing a legislative recognition of the omission in the principal act.   We see no reason, therefore, to change the construction heretofore given to section 42 (*supra*).   But this does not dispose of the case.   The relator was neither retired from office nor granted a pension under either act. Upon the former argument the respondents conceded that the relator's salary was fixed by statute, but that having performed no service during the period for which the salary was claimed, he had no right thereto ; their contention now is that the relator's compensation is " not a salary to which he acquires right by reason of his title to office, but pay for service performed." Upon both occasions it has been conceded that the relator is a patrolman, and although the words used in designating the compensation to be paid to him are not uniform in different statutes, they do not, so far as the question before us is concerned, convey a different intention.

In the Laws of 1844, chapter 315, entitled " An act for the establishment and regulation of the police of the city of New York," the then existing watch department was abolished and a day and night police not to exceed eight hundred men, including captains, assistant captains and policemen, established in its place, to be appointed for a particular time, the policemen for one year, with compensation to be fixed by the common council, not exceeding $500 to each patrolman, and it declares that the salaries " shall be paid by the comptroller by warrant, semi-monthly."   (§ 5, art. 4, *supra*.)   The patrolmen

might be removed for cause, upon notice. (Art. 3, § 4.) This act was amended in 1846 (Chap. 302), and the time of service extended to two years, and sickness and disability made an excuse for absence from duty, but not in any other particular material here, and again in 1849 (Chap. 436), when compensation "for any period during which" members of the force were absent from duty, was forbidden, "except" allowed by the mayor in cases in which he shall be satisfied that the absence was consequent upon disease or injury contracted in the public service. The term of service was enlarged to four years, and it was declared that the compensation fixed for members of the force by the common council should not be increased or diminished during the time for which they were appointed

In 1853, a new act was passed (Chap. 228), entitled "An act in relation to the police department in the city and county of New York." It repealed many provisions of the previous acts, declared that no member of the police department should be reappointed, "who shall have resigned before the expiration of his term of office," required certain qualifications in the candidate for appointment, moral, mental and physical, and certain literary attainments, and enacted that all members thereafter "appointed should hold their offices during good behavior," and be removed only for cause, in the manner prescribed in the act, and after notice to the accused of the complaint against him, and opportunity to be heard by counsel, and power to compel the attendance of witnesses in his behalf (§ 4). It provided that compensation should be fixed by the common council, and "the salaries" (among others) of policemen be paid by warrant. It repealed all previous acts inconsistent therewith, and not only failed to reproduce the condition which made the sick policeman's pay depend on the mayor's pleasure, but expressly declared that if absent from duty "in consequence of disease or injuries contracted in public service," he should "receive full pay" (§ 8). By the act of 1857 (Chap. 569), a metropolitan police district was established, and a police force consisting, among others, of patrolmen to be appointed by the police board, each to hold office during such

time as he should faithfully observe and execute all the rules and regulations of the said board, the laws of the State and the ordinances existing within the district where he might be on duty (§ 7), prescribed his qualifications for "office," the manner of his removal therefrom, and if removed for cause, pronouncing him disqualified "to again hold any office in the police force." Compensation is provided for (§ 23). To members of the board an allowance of $8 for each day of actual service; to its treasurer and its clerk and his deputy, to the superintendent of police and his deputy, to each sergeant of police and each inspector or captain of police, a salary which is named, and then declares that the pay of each patrolman shall be at the rate of $800, and of each doorman at the rate of $700 per year. The act of 1860 (Chap. 259, § 63) is in this respect substantially the same, and so is that of 1864 (§ 63), but the compensation or pay of patrolmen is increased to $1,000. That no distinction was intended by the use of these different words "salary" and "pay," or if there was, that the intention was abandoned, is apparent from the subsequent legislation.

In 1865 (Chap. 592, § 3) the commissioners of the metropolitan police were directed to appoint five additional policemen, and it is declared that "the salary of the five policemen so to be appointed * * * * shall 'be' the same salary as other policemen are paid in the metropolitan district." The words "patrolmen" and "policemen" are used indiscriminately and mean the same persons. (Act of 1857, *supra*, § 36.) In 1866 (Chap. 861) section 63 of the act of 1864, was amended by increasing the pay of patrolmen to the "yearly rate of $1,200." By the act of 1867 (Chap. 481), making appropriations for certain expenses of government, a sum of money is awarded "for the metropolitan police board, being the amount paid for the salaries of policemen appointed under chapter 592 of the Laws of 1865," and it declares that "henceforth the salaries of the policemen so appointed or hereafter appointed shall be paid in the same manner that the salaries are paid of other members of the metropolitan police force." In 1870 (Chap. 137, § 47) the local government of the city of New York was re-

1883.]     PEOPLE, ex rel. RYAN, *v.* FRENCH et al.          277

Opinion of the Court, per DANFORTH, J.

organized, and in the statute effecting it the words " salary " and
" compensation " are used in the alternative as defining the same
thing, and the position of the person receiving it is treated as an
office. " Every person," it says, " connected with the metropoli-
tan police department at the time this act shall take effect, and
designated to do duty in the city of New York,     *    *    *    *
shall continue in office and be transferred by the operation of
this act to the department herein created, and the amount, or
salary, or compensation now paid to such person in the metro-
politan police district shall be the salary and compensation for
his transferred office under this act." We are thus brought to
the act of 1873, which was before dwelt upon, but which will
seem more significant when read in connection with the line
of statutes now before us. It is entitled " An act to reorganize
the local government of the city of New York " (Chap. 335),
and in treating of the police department (Art. 7), declares
(§ 43) that every person connected with the police depart-
ment of the city at the time the act takes effect (with an ex-
ception not material here) " shall continue in office, and the
amount of salary or compensation now legally paid to such
person (with another exception not material to any question
before us) shall be the salary or compensation fixed for his of-
fice under this act." The legislation of 1880 (Chap. 521, § 2)
amending the act of 1873, confirms the construction before
given by us to the principal act. It declares " the annual
salaries " to be paid to persons therein named, and among
others the members of " the uniform police force," and " fire
department," and defines their compensation as a " salary."
From these statutes it seems apparent that a person once ad-
mitted to the police force takes his position as an office, to be
held by him so long as he performs the duties laid upon it,
and to enjoy its salary until by some form of law he is re-
moved. By its permanence and stability of compensation it
is probable that better service is obtained, and greater faith-
fulness in the execution of business which frequently puts at
hazard life or limb. Both parties have urged in support of
their respective claims the authority of usage. The relator by

reference to instructions and advice given to the police commissioners from time to time by the law department of the city, as to the tenure of office of persons occupying positions like that of the relator, showing an exposition of the statute, conforming to the construction we have given to it, and the respondents by averring a continuous practice of the commissioners to make deductions from salary of similar character to those now complained of. If this practice has prevailed, it has not been supported by enactment of the legislature or by judicial decision, and however general it may have been, it cannot be effectual to control the true construction of the law, or impair a plain right given by the statute.

I can find no warrant or authority by which we can limit the compensation of a patrolman to a sum earned by "actual service," or construe a statute giving him an annual salary during good behavior, as we should construe the provision in the act of 1857 (§ 23, *supra*), giving a *per diem* pay to a commissioner for "actual service." The very plain and great difference in the language forbids it. The various acts cited by the learned counsel for the respondents, as recognizing the practice referred to (Laws of 1857, chap. 569; Laws of 1860, chap. 259; Laws of 1867, chap. 806; Laws of 1870, chap. 383; Laws of 1878, chap. 389), relate to the police fund and its augmentation from various sources — gifts, rewards and fees, fines imposed upon members of the police force by way of discipline, deductions from pay on account of lost time at varying sums per month, but falling short of the case in hand.

*First.* The enactment to which I have already referred (Laws of 1853, chap. 228, § 8, art. 1), providing "that policemen absent from duty through disease or injuries contracted in public service, shall receive full pay," has not been in terms repealed by any statute to which we have been referred, or which I have been able to find. It is not affected by the general repealing clause of subsequent statutes; for it is inconsistent with none of them. By the act of 1857 (Chap. 569, § 36), the words "policeman" and "patrolman" are declared to be identical in meaning in any act not repealed thereby.

*Second.* But if we look at the provisions of the acts cited, the same result follows : we nowhere find an intention to deprive the disabled officer of the immunity thus given, or legislative sanction or recognition of the process by which the relator was deprived of his pay during sickness and while kept in the police force. By the act of 1857 (*supra,* § 24), the police fund is derived from sources in no way relating to the one in question. In 1860 (Chap. 259, § 66), it was increased by fines imposed by way of discipline and proceeds of suits for penalties. In 1867 (Chap. 403, § 22) and 1870 (Chap. 137, § 66), some changes were made not important here, but chapter 383 of the Laws of 1870 (§ 19) directed that there should be taken monthly out of the moneys deducted from the pay of members of said force on account of lost time, a sum calculated at the rate of fifty cents per month for each member of such force. In 1871 (Chap. 126), it was raised to one dollar, in 1878 (Chap. 389), to three dollars, and in 1882 to four dollars per month.

It is apparent that the resolution of the respondents cannot stand on these premises. The relator's pay has not been diminished with any reference to them. At one period he was paid one-half, at another only one-quarter of his salary. The moneys detained exceed it is said $2,000, a sum largely in excess of the aggregate of any sum specified by any statute, or which could be obtained by its methods. But it is enough to say that the application of the statute is not resisted upon the ground that the reduction was under the statute, nor do the respondents' papers lay a foundation for it. On the contrary we perceive that the action of the respondents contravenes the object of the legislature, whose scheme, as manifested by various statutes (*supra*), was to secure efficiency in the police force by the selection of persons having certain prescribed qualifications, then experience and permanence by extending the term of office from one to two years, then to three years, afterward to four years, and finally to a period defined only by the good behavior of the officer, and securing him against removal until, after an opportunity to be heard, he should be

found guilty of offense, thus promoting his independence by a fixed salary payable at stated times, giving to his superiors no power over his subsistence and stimulating him to a faithful and energetic devotion to the important duties of his office, not only by a permanent position, while he could perform them, but by the provision of a pension if during their performance he became disabled. In this way also obtaining for actual service a body of efficient men, and securing the retirement of those who became incompetent. The respondents have so dealt with the relator as to defeat this purpose. Although incapable of labor, he is denied a pension, and against his will retained in office without advantage to the public, because filling a position for which he is disqualified. For this he is not responsible. It is the error of the respondents. We find no reason, therefore, for changing the views before expressed, and are still of the opinion that the relator is entitled to his salary by virtue of his office, and that the respondents had no legal right to withhold it. He has been adjudged guilty of no fault, subjected to no fine, incurred no liability to punishment, nor has he lost time. By permission of lawful authority he has been absent on "sick leave," made necessary, as that permission implies, by the faithful performance of duty. This result reached by us in no respect interferes with the power of the respondents to control by rules and regulations the conduct and faithful attendance of members of the force to the duties of their office, and is applicable only to a case where the absence of a member is enforced by disease or injuries incurred while executing the duties of his office. Such is this case as it stands on the concession in the opposing affidavits of the respondents. The statute allows the retirement of a policeman "if disabled while in the actual performance of duty," and the concession in this case is that the relator's injury arose "from the ordinary discharge of police duty, or during the ordinary discharge of police duty," in contradistinction apparently from such injury or sickness caused by "unusual exposure or exertion" while in the discharge of such duty. The condition goes beyond the statute.

We must adhere to the conclusion before announced, that the order of the Special and General Terms be reversed and the writ of *mandamus* allowed.

All concur.

Ordered accordingly.