(46 App. Div. 518.)

## O'HARA v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   January 5, 1900.)

CITY EMPLOYES—VETERANS—UNLAWFUL REMOVAL—RIGHT TO SALARY.

A veteran appointed as a cleaner, and subsequently detailed as watchman, in the county court house of the city of New York, at a certain weekly salary, is, under Act 1896, providing that a veteran holding a position by appointment or employment in any city, and receiving a salary or per diem pay from the city, shall not be removed except for cause; and Greater New York Charter, § 127, declaring all veterans in the service of either of the municipal or public corporations hereby consolidated, who are entitled to serve during good behavior, or who cannot be removed except for cause, shall be retained in like positions,—within the principle that one entitled to an office under a municipal corporation at a fixed or agreed-on salary can recover the salary while retaining title to the office, though performing no service, if prevented from doing so by a superior officer who has unlawfully attempted to remove him, no one else filling the office and being paid for performing the duties thereof.

Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by John Lawrence O'Hara against the city of New York. From a judgment on a verdict for plaintiff (59 N. Y. Supp. 36), defendant appeals.   Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Theodore Connoly, for appellant.
George F. Langbein, for respondent.

RUMSEY, J.   There is no dispute about the facts in this case. The plaintiff, who is a veteran of the war of the Rebellion, and was honorably discharged from the service, was appointed a cleaner, and subsequently detailed as watchman, in the county court house in the city of New York in the month of November, 1888, at the salary of $14 a week.   He retained that position until the 24th of October, 1898, when he was removed without a hearing by the commissioner of public buildings, lighting, and supplies.   It is alleged in the complaint, and admitted, that the removal was a violation of chapter 821 of the Laws of 1896, which was the statute then in force on that subject.   The plaintiff tendered his services from time to time to the commissioner, and made applications to perform the duties of the position from which he had been removed, and demanded his reinstatement.   It was refused, and he subsequently made a motion for a writ of peremptory mandamus to the commissioner; and on the 28th day of December, 1898, he was reinstated in his position, and the order of removal was revoked.   No one had been appointed in his place, and the salary which had been paid

to him was not paid to any one else. The plaintiff brought this action to recover the salary due him from the time of his removal to his reinstatement, and upon the facts above stated the court directed a verdict for it. From that verdict and from the order denying a new trial this appeal is taken.

The principles of law applicable to this form of action have been considerably changed within the last few years, and the right to recover has been very much enlarged. For many years it was thought to be the law that, although one had been unlawfully ousted from an office to which a salary was attached, he was not entitled to recover the salary, for the reason that he had not performed the duties of the office; the theory being that the right to the salary depended upon the performance of the duties. Smith v. Mayor, etc., 37 N. Y. 518, seems to have been the last case in which that rule was laid down. But gradually the rule was limited, and in the case of Dolan v. Same, 68 N. Y. 274, while it was held, as it had been held in the previous cases, that the payment of the salary to a de facto holder who actually performed the duties of the office was a defense in the action by the de jure officer for the salary during the time that such salary had been actually paid to the person performing the duties, yet the de jure officer was entitled to recover so much of the salary as had not been actually paid to the person who performed the duties. The rule seems to have been further extended in McVeany v. Mayor, etc., 80 N. Y. 185, where all the cases on the subject were reviewed, and it was held that although the plaintiff had personally rendered no services, and the duties of the office had been performed by the one who had illegally ousted him, who had in fact been paid in full for the duties as thus performed, yet, as to so much of the payment as was made after disbursing officer had notice of the rights of the plaintiff, the city was not protected, and the plaintiff was entitled to recover. The rule was further extended by the case of Fitzsimmons v. City of Brooklyn, 102 N. Y. 536, 7 N. E. 787, in which it was held that where an officer entitled by law to a fixed salary has been prevented for a time, without any fault of his own, from performing the duties of his office, he was entitled to recover the amount of his salary during the time while he was prevented from doing his duty. In that case the plaintiff had been unlawfully removed as a member of the police force, but upon certiorari the order of removal was vacated and he was reinstated, and he was permitted to recover the salary due from the time he had been ousted from his position. The same principle had been substantially decided in the cases of People v. French, 91 N. Y. 265, and Langan v. City of Brooklyn, 98 N. Y. 623, and it was approved in the cases of Gregory v. Mayor, etc., 113 N. Y. 416, 21 N. E. 119, 3 L. R. A. 854, Emmitt v. City of New York, 128 N. Y. 117, 28 N. E. 19, and Wardlaw v. Same, 137 N. Y. 194, 33 N. E. 140. As a result of these cases, it must be regarded as finally settled in this state that one who is entitled to an office under a municipal corporation at a fixed or agreed-upon salary can recover the amount of that salary while he retains the title to that office, although in fact he performed no services, if prevented from performing those

duties by a superior officer who has attempted to remove him in violation of the law, and no other person has filled the office and been paid for the performance of the duties thereof.

If that principle can be applied to this case, the right of the plaintiff to recover is clear. But it is claimed that the principle does not apply, for the reason that the plaintiff does not hold any office, strictly speaking, but is a mere employé. While he was serving in his position as watchman the law of 1884 giving him the preference in appointment had been amended from time to time, until in 1896 it had been provided:

"That no person holding a position by appointment or employment, in the state of New York or in the several cities thereof, * * * and receiving a salary or per diem pay * * * from any of the several cities * * * who is an honorably discharged soldier," etc., "shall be removed from such position or employment except for incompetency or misconduct shown after a hearing upon due notice upon the charges made, and with the right to such employé or appointee to a review by writ of certiorari."

After that law had taken effect the plaintiff held his position during good behavior, and was irremovable so long as he was competent and guilty of no misconduct. That being his position, the Greater New York charter took effect, by which it was provided:

"That all veterans * * * now in the service of either of the municipal or public corporations hereby consolidated, who are entitled by law to serve during good behavior, or who cannot under existing law be removed except for cause, shall be retained in like positions." Section 127.

As a result of that statute the plaintiff was established in the position which he then occupied during his good behavior. That being the case, we are unable to see that his position differed in any degree from one who is a holder of an office created by law. It does not seem to be necessary that one who has been illegally removed from his position shall have held an office established by statute, or the compensation of which has been fixed by law, to authorize him to recover his salary for the time he has been ousted. In the cases of Gregory v. Mayor, etc., 113 N. Y. 416, 21 N. E. 119, 3 L. R. A. 854, and Emmitt v. City of New York, 128 N. Y. 117, 28 N. E. 19, the plaintiffs held positions which were not public offices created by statute, nor was the compensation fixed; but in each case it was held that the plaintiff was entitled to recover the salary while he was illegally suspended, although he rendered no services. The case of Higgins v. City of New York, 131 N. Y. 128, 30 N. E. 44, which is relied upon by the learned counsel for the appellant, is not, we think, in point. At the time that was decided the statute in force was chapter 464 of the Laws of 1887, which regulated the power of appointment of such persons, but did not in terms secure to them the position during good behavior, and contained no provision in regard to their removability. The act of 1896, under which the plaintiff claims, not only regulates the appointment, but confirms the position of the person appointed during good behavior; and it would seem that one who had a situation of that kind, which he was entitled to hold, should be protected equally with one who has any other position which entitled him to a salary upon performing the services. It appeared in the Case of Higgins that the

salary incident to the office had been actually paid to another, and the case was decided against the plaintiff because of that fact, on the authority of Terhune v. Mayor, etc., 88 N. Y. 247. The plaintiff was not a simple employé holding his place at the will of the person who employed him, but his right to his place was regulated by the statute, and his time of service was also regulated in the same way. Nor were his duties menial, even if that can be said to be material. As a watchman, it is fairly to be assumed that he was called upon to use good judgment, and it was necessary that he should be an honest, reliable, and trustworthy man. But the nature of his duties is not particularly important. The case turns upon the right which the plaintiff had to the position to which he was appointed, and, so long as his right to the position existed, we think the rule should be applied which has come to be recognized in cases of this kind,—that the right to the salary is an incident of the position from which one is irremovable, and as long as the position exists the right to the salary remains.

For this reason the judgment and order appealed from must be affirmed, with costs. All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. I cannot concur in holding the defendant liable to pay an employé for services that were never performed, because of a violation of law by a commissioner of one of the departments of the city. It appeared that the plaintiff was duly appointed as a cleaner, and was subsequently detailed as a watchman, in the county court house in the city of New York, now in the borough of Manhattan in said city, at a salary of $14 per week, which was paid to this plaintiff by said defendant for work, labor, and services he did and performed as such cleaner and watchman for said defendant until the 24th day of October, 1898, when he was removed and discharged as such cleaner by the commissioner of public buildings, lighting, and supplies, without any charges being made or preferred against him, and without any notice or hearing or trial upon any charge against him, although the plaintiff was an honorably discharged veteran soldier of the war of the Rebellion, and that such removal and discharge were in violation of chapter 821 of the Laws of 1896, amending chapter 312 of the Laws of 1884; that the plaintiff "has ever since, and always has, been ready and willing to perform the said work, labor, and services as cleaner or watchman, and has tendered his services as such to said commissioner and said defendant, and has demanded his reinstatement as such, but the same was refused until the 28th day of December, when said commissioner and defendant reinstated this plaintiff to said position of cleaner, and revoked said removal"; that, "by reason of the matters aforesaid and the premises, this plaintiff has suffered damages in the loss of his salary during the time of the continuance of said unjust and unlawful removal, to wit, from October 24, 1898, to December 28, 1898, amounting to the sum of one hundred and thirty-three dollars"; and for this sum of $133, with interest thereon, the plaintiff has obtained judgment against the defendant, the city of New York.

It appears from the allegations of the complaint that the position occupied by the plaintiff was that of a subordinate employé, and that he held no public office. By section 456 of the charter, the commissioner at the head of a department, or a deputy commissioner in charge of a branch office of a department, subject to the approval of the head of his department, has power to appoint such clerks and subordinates as may in his judgment be necessary, and may fix and regulate their salaries within the limit of the appropriation duly made therefor. Thus, the head of the department of public buildings, lighting, and supplies had the power to appoint and remove his subordinates, and had the power to appoint and remove a person employed in his department. During the time for which this plaintiff has recovered his compensation that would have been due to him had he performed any services for the city, he performed no such services, having been discharged. Such discharge was prohibited by law, and under the established rule of law there was no liability imposed upon the city or upon the public to pay the plaintiff for services which he did not perform. This precise question was presented to the court of appeals in the case of Higgins v. City of New York, 131 N. Y. 130, 30 N. E. 44, where the plaintiff, an honorably discharged Union soldier, was removed from the position of laborer at the dog pound, which removal was illegal, and to which position he was reinstated. The court, in considering the effect of the veteran act upon such a discharge, says:

"The effect of this legislation was to impose a personal duty upon the public officials to carry out the provisions of the law, and to subject them to penal consequences if those provisions were disregarded or violated. The appointee acquiring office or employment under this law, of course, enters into certain relations with the municipality, and gains the legal right to be paid by it for the services he renders; but it is not easy to understand how the resultant relations of the employé can be deemed to rest upon or to be regulated by any contract by the city. * * * There is no intention deducible from the act that the municipality is to be made liable for any violation of its provisions. The very existence of the provision in the law for the case of a failure by an official to faithfully comply with its terms would seem to effectually negative that idea. To uphold the right to recover from the municipality for a time when the plaintiff was not serving it, and when another was rendering the particular services, would certainly amount to visiting upon the city the consequences of the violation by its officer of a law which was meant to regulate and control his conduct in making appointments, as it would likewise be in violation of the usual legal rule of liability in such cases. * * * With respect to any effect which this act of 1887 has upon the question, I think it may be said generally that the only obligation under which the city comes to an appointee under its provisions is to pay him his compensation for the services which he renders while in office and employed. Its only relations are to the appointee as such, and it is not in the least degree legally concerned with him, or with his grievance, if he has lost his office or employment by the wrongful or illegal act of the person possessing the power of appointment. The municipality must pay for the services rendered to it, on principles of liability quite unconnected with this act. Where no services are rendered, it is not conceivable that an obligation is imposed by law upon the city with respect to compensation."

As this is the latest statement by the court of appeals of the law upon this question, I think it is controlling. The cases cited by Mr. Justice RUMSEY all relate to the right to the salary attached to an office, and are distinguished in the Higgins Case, supra. It is claimed

by the plaintiff, however, that a different rule should be applied in consequence of the amendment of the veteran act (chapter 821 of the Laws of 1896). That act provides that:

"No person holding a position by appointment or employment in the state of New York, or of the several cities, counties, towns or villages thereof, and receiving a salary or per diem pay from the state, or from any of the several cities, counties, towns or villages thereof, who is an honorably discharged soldier, sailor, or marine, having served as such in the Union army or navy during the war of the Rebellion, * * * shall be removed from such position or employment except for incompetency or misconduct shown, after a hearing upon due notice, upon the charge made, and with the right of such employé or appointee to a review by writ of certiorari; and such honorably discharged soldier, sailor or marine shall have right of action therefor in any court of competent jurisdiction for damages, and also a remedy by mandamus for righting the wrong."

It is claimed by the plaintiff that this act gives to a person illegally removed a right of action for damages against the state or municipality which but for the removal would be under an obligation to pay him for services which he would have performed but for such removal. There is nothing, however, in the act which would indicate such an intention on the part of the legislature. The act itself imposes no duty upon the municipality or the state. It provides that honorably discharged Union soldiers shall be preferred for appointment. It imposes a duty upon the appointing officer to grant such preferences, and then provides that such honorably discharged Union soldiers shall not be removed from a position to which they have been appointed, except for incompetency or misconduct, after a hearing. It thus imposes a duty, not upon the state or municipality, but upon the officer in whom is vested the power of removal, and the act of such appointing officer is subject to review by writ of certiorari. A refusal to grant a preference, or a removal in violation of the provisions of the act, is made a misdemeanor; but it is the appointing officer, or the officer having the power of removal, who is guilty of the misdemeanor if the act is violated. A right of action for damages is then given to the person injured by the violation of the act, but it would seem to follow that the action for damages is against the person who has violated the act and caused the damage, and not against the state or municipality; and the person given the protection of the statute has also a remedy by mandamus to right the wrong, but, again, it is clear that this remedy is against the officer having the power of removal, and not against the city or municipality. Thus, the whole scope of the statute would seem to indicate an intention on the part of the legislature to impose a duty upon the appointing officer, and provide a proper penalty to be imposed upon the officer vested with such power, for a violation of the statute. In this case the municipal corporation of the city of New York has been guilty of no breach of duty. It is the commissioner of buildings who violated the statute in the performance of the duties imposed upon him by law. The municipality had no power to control his action, no power to prevent him making the removal, no power to compel the reinstatement of the plaintiff to the position from which the commissioner removed him. I think it would require a clear indication of an intention to visit an injury caused by

a violation of such a statute by the head of the department upon the municipality, and there would seem to be no reason why the taxpayers of the city of New York should be compelled to pay a sum of money for services not rendered to the city, because a public officer in whom the legislature had vested certain specific duties had failed to perform those duties as required by law. I think, therefore, that the plaintiff failed to show any cause of action against the defendant.