(75 Misc. Rep. 335.)

### CANTWELL v. CITY OF NEW YORK.

### CAREW v. SAME.

(Supreme Court, Trial Term, Kings County.   January 31, 1912.)

MUNICIPAL CORPORATIONS (§ 212*)—MATRON OF JAIL—LAWFUL REMOVAL—SALARY.

> Under Laws 1907, c. 637, transferring jurisdiction over the Kings county jail to the Commissioner of Correction of the City of New York, and providing that every matron employed in the jail at the time of the transfer who prior thereto shall have passed a civil service examination shall be retained, where a matron possessing the requisite qualifications and having a fixed salary is summarily removed by the commissioner at the time of the transfer without charges being filed or any hearing being given her, and is kept out of her position until reinstated by a mandate, she is entitled to her salary for the period between her removal and her reinstatement, less the amount earned by her during this period, though she is not strictly speaking a public officer.

> [Ed. Note.—For other cases. see Municipal Corporations, Cent. Dig. §§ 571, 572; Dec. Dig. § 212.*]

Two actions, one by Lillian Cantwell and the other by Mary Carew, both against the City of New York.   Verdict directed for plaintiffs.

William W. Wingate, for plaintiffs.

Archibald R. Watson, Corp. Counsel (James D. Bell and Sanders Shanks, of counsel), for defendant.

BENEDICT, J.   These two actions, which were tried together before the court with a jury were brought, in each case, to recover the salary claimed to be due to the plaintiff as matron of the Kings county jail for the period from the 1st day of January, 1908, to the 1st day of January, 1910.   At the close of the evidence plaintiffs and defendant both moved the court to direct a verdict, there being no conflict in the evidence and no dispute as to the facts, and it being conceded that questions of law only were involved, the·decision of which would determine the rights of the parties.   The facts established by the evidence were that each of the plaintiffs was appointed to the position of matron in the Kings county jail, otherwise known as the Raymond street jail, on the 1st day of January, 1902, by the sheriff of the county by virtue of the authority conferred by chapter 705 of the Laws of 1901, being an act to make the office of sheriff of Kings county a salaried office and regulating the management thereof.   The plaintiffs served in these positions until the 31st day of December, 1907, when they were removed by the then commissioner of correction of the city of New York, to

whom official jurisdiction over the Kings county jail had been trans-
ferred by authority of chapter 637 of the Laws of 1907. They were,
respectively, reinstated in the position of matron on the 31st day of
December, 1909, in obedience to a peremptory writ of mandamus is-
sued by this court on the 22d day of November, 1909, and thereafter
brought these actions to recover salary at the yearly rate of $1,000
for the period which had elapsed between their removal and reinstate-
ment; i. e., from the 1st day of January, 1908, to the 1st day of Jan-
uary, 1910.

The status of the plaintiffs under the statutes above referred to
will determine their right to recover in these actions.

Under the act of 1901, above referred to, it was provided as fol-
lows:

"Sec. 2. On and after the first day of January, in the year nineteen hun-
dred and two the salaries to be paid the assistants, clerks, employés or sub-
ordinates in the said sheriff's office shall be at the rate per annum as follows:
The undersheriff, six thousand dollars, chief clerk, two thousand five hundred
dollars, * * * eight deputy sheriffs each two thousand two hundred dol-
lars, * * * jail warden three thousand dollars, deputy jail warden two
thousand dollars, eight keepers of jail, each one thousand two hundred dol-
lars, bookkeeper of jail one thousand five hundred dollars, three matrons of
jail each one thousand dollars, five prison van drivers, each one thousand dol-
lars, three cleaners, each, seven hundred and fifty dollars, three cooks, each
three hundred dollars, one laundress, two hundred and fifty dollars. * * *

"Sec. 3. The board of estimate of the city of New York shall provide for
the foregoing salaries annually. * * *

"Sec. 6. The sheriff of the county of Kings shall have the power to ap-
point and at will remove all deputies, clerks and other employés or assistants
in his office subject to the provisions of the civil service law and shall pre-
scribe and regulate their respective duties. * * *"

The act of 1907, above referred to, contained the following provi-
sion:

"Each and every warden, deputy warden, jail keeper, van driver, matron,
cook, laundress, cleaner and bookkeeper, who on the first day of January, nine-
teen hundred and seven, was, in accordance with the provisions of law, em-
ployed as such in and about the Kings county jails, and who shall continue to
be so employed at the time of the transfer of said jails to the department of
correction of the city of New York by virtue of this section; and who shall
prior thereto have successfully passed a civil service examination under the
civil service law in accordance with the rules and regulations prepared by the
municipal civil service commissioner, shall be retained and assigned to per-
form the same services in the same institution in which they are employed at
the time the department of correction shall have assumed control and the
management of the buildings now used as jails in the county of Kings."

Although this act took effect on the 19th day of July, 1907, the
commissioner of correction did not assume control until December 31,
1907. At the time he took control he found the two above plaintiffs
acting as matrons in said jail, both having all the qualifications pro-
vided in section 637 of the Laws of 1907, namely, appointed in ac-
cordance with the provisions of law and employed in said jail at
the time of the transfer, and both having successfully passed a civil
service examination as therein provided; and, instead of retaining
them in pursuance to said act, he removed both on December 31, 1907.

A mandamus proceeding was immediately commenced for their re-

instatement on the ground that they had all the necessary qualifications as provided in the above act of 1907, and that no charges of any kind had been preferred against them and no hearing had, and that they had not been given an opportunity to be heard, and that, therefore, they should have been retained, and the court so held upon an appeal to the Appellate Division (People ex rel. Carew v. Coggey, 134 App. Div. 938, 118 N. Y. Supp. 1133), and directed a writ of peremptory mandamus to issue reinstating said plaintiffs to the position of matrons at the salary of $1,000 per year each, and thereafter, and on December 31, 1909, as appears by the return to said writ, the commissioner of correction reinstated each of the said plaintiffs as matron in the city prison in the borough of Brooklyn at a salary of $1,000 per year.

It is alleged in the complaint, and not denied in the answer, that the plaintiffs during all of said period duly performed all the duties of said office on their part to be performed to entitle them to the salary thereof as provided by law, that the defendant is a domestic municipal corporation, and that the plaintiffs' claims for salary were duly presented to the Comptroller 30 days before the commencement of the action. It appears that the plaintiffs performed no services during said period, except that the plaintiff Mary Carew performed certain work for the city for which she received $150. It also appears from the examination that the plaintiffs took a competitive examination for the position of matron, and both matrons made ineffectual attempts to obtain employment during said period.

The learned counsel for the defendant contended that the plaintiffs, not being public officers, cannot recover salary for the two years during which they did no work, labor or services for the defendant, citing Higgins v. Mayor, 131 N. Y. 128, 30 N. E. 44; Cook v. Mayor, 9 Misc. Rep. 338, 30 N. Y. Supp. 404, affirmed without opinion 150 N. Y. 578, 44 N. E. 1123; Douglass v. Board of Education, 21 App. Div. 209, 47 N. Y. Supp. 435; O'Donnell v. City of New York, 128 App. Div. 186, 112 N. Y. Supp. 186; Quintard v. City of New York, 51 App. Div. 233, 64 N. Y. Supp. 904; Fitzsimmons v. City of Brooklyn, 102 N. Y. 536, 7 N. E. 787, 55 Am. Rep. 835. The difficulty with the defendant's contention, however, is found in the modification of the rule laid down in these and other decisions by extending the right of recovery of salary as an incident to the holding of a public office, not only to the class of persons generally described as public officers, but to any person in the municipal service who is appointed under civil service rules at a fixed salary, and for either a definite term of office, or to a position from which he may not be removed except for cause and upon charges; and this modification of the rule makes it unnecessary for the purposes of these actions to determine whether the plaintiffs were public officers or not. The modification of the rule is found in O'Hara v. City of New York, 46 App. Div. 518, 62 N. Y. Supp. 146, affirmed on opinion below 167 N. Y. 567, 60 N. E. 1117. Rumsey, J., in writing the prevailing opinion of the Appellate Division, said:

"The principles of law applicable to this form of action have been considerably changed within the last few years, and the right to recover has been very much enlarged. For many years it was thought to be the law that, although one had been unlawfully ousted from an office to which a salary was attached, he was not entitled to recover the salary for the reason that he had not performed the duties of the office; the theory being that the right to the salary depended upon the performance of the duties. Smith v. The Mayor, 37 N. Y. 518, seems to have been the last case in which that rule was laid down. But gradually the rule was limited. * * * The rule was further extended by the case of Fitzsimmons v. City of Brooklyn, 102 N. Y. 536, 7 N. E. 787, 55 Am. Rep. 885, in which it was held that, where an officer entitled by law to a fixed salary has been prevented for a time without any fault of his own from performing the duties of his office, he was entitled to recover the amount of his salary during the time he was prevented from doing his duty. In that case the plaintiff had been unlawfully removed as a member of the police force, but upon certiorari the order of removal was vacated and he was reinstated, and he was permitted to recover the salary due from the time he had been ousted from his position. The same principle had been substantially decided in the cases of People ex rel. Ryan v. French, 91 N. Y. 265, and Langan v. City of Brooklyn, 98 N. Y. 623, and it was approved in the cases of Gregory v. Mayor, 113 N. Y. 416 [21 N. E. 119, 3 L. R. A. 854], Emmitt v. Mayor, 128 N. Y. 117 [28 N. E. 19], and Wardlaw v. Mayor, 137 N. Y. 194, 33 N. E. 140. As a result of these cases it must be regarded as finally settled in this state that one who is entitled to an office under a municipal corporation at a fixed or agreed upon salary can recover the amount of that salary while he retains the title to that office, although, in fact, he performed no services, if he was prevented from performing those duties by a superior officer who attempted to remove him in violation of the law, and no other person has filled the office and been paid for the performance of the duties thereof. If that principle can be applied to this case, the right of the plaintiff to recover is clear. But it is claimed that the principle does not apply for the reason that the plaintiff does not hold any office, strictly speaking, but is a mere employé. While he was serving in his position as watchman, the law of 1884 giving him the preference in appointment had been amended from time to time. * * * As a result of that statute the plaintiff was established in the position which he then occupied during his good behavior. That being the case, we are unable to see that his position differed in any degree from one who is a holder of an office created by law. It does not seem to be necessary that one who has been illegally removed from his position shall have held an office established by statute or the compensation of which has been fixed by law to authorize him to recover his salary for the time he has been ousted. In the cases of Gregory v. Mayor, 113 N. Y. 416, 21 N. E. 119, 3 L. R. A. 854, and Emmitt v. Mayor, 128 N. Y. 117, 28 N. E. 19, the plaintiffs held positions which were not public offices created by statute, nor was the compensation fixed, but in each case it was held that the plaintiff was entitled to recover the salary while he was illegally suspended, although he rendered no services. * * * The plaintiff was not a simple employé holding his place at the will of the person who employed him, but his right to his place was regulated by the statute and his time of service was. also regulated in the same way. Nor were his duties menial even if that can be said to be material. As a watchman it is fairly to be assumed that he was called upon to use good judgment, and it was necessary that he should be an honest, reliable, and trustworthy man. But the nature of his duties is not particularly important. The case turns upon the right which the plaintiff had to the position to which he was appointed; and, so long as his right to the position existed, we think the rule should be applied which has come to be recognized in cases of this kind, that the right to the salary is an incident of the position from which one is irremovable, and, as long as the position exists, the right to the salary remains."

The O'Hara Case was followed by the Appellate Division in this Department in Allen v. City of New York, 120 App. Div. 539, 104 N.

Y. Supp. 919. Mr. Justice Miller, in writing the opinion, in which all the Justices concurred, said:

"The respondent contends that the plaintiff's proposed transfer from the office of said borough president to the department of water supply, gas, and electricity was never consummated, and that, even if it was, being an employé merely, he cannot recover pay without having performed services. * * * In support of the second proposition the respondent cites Cook v. Mayor, 9 Misc. Rep. 338 [30 N. Y. Supp. 404], affirmed 150 N. Y. 578 [44 N. E. 1123], Quintard v. City of New York, 51 App. Div. 233 [64 N. Y. Supp. 904], and Eckerson v. City of New York, 80 App. Div. 12 [80 N. Y. Supp. 168], affirmed 176 N. Y. 609 [68 N. E. 1115], but in none of those cases did the person claiming salary hold a definite position to which a fixed salary attached and whose tenure was protected by statute. The plaintiff could only be removed by compliance with section 1543 of the charter (Laws of 1901, c. 466), and it is not claimed that he was removed, or that any one was appointed to his position or has drawn the salary attaching to it. The relation between an employé and the city is contractual. Where he holds a definite position at a fixed salary, and is removable not at will but only in the manner provided by statute, the city contracts to pay him until thus lawfully removed, and the same rules apply to a breach of that contract as to that of a similar contract of employment between individuals, except that on grounds of policy the public will not be compelled to pay twice for the same services where it has once paid to the person in fact occupying the office or position. Martin v. City of New York, 176 N. Y. 371 [68 N. E. 640]. The plaintiff was at all times ready to perform his part of the contract, and made many tenders of performance, and I think the question of his right to recover under such circumstances is no longer open to discussion. Steinson v. Board of Education of N. Y., 165 N. Y. 431 [59 N. E. 300]; Graham v. City of New York, 167 N. Y. 85 [60 N. E. 331]; O'Hara v. City of New York, 46 App. Div. 518 [62 N. Y. Supp. 146], affirmed on opinion below 167 N. Y. 567 [60 N. E. 1117]."

Under the statutes above referred to and these authorities, I am of the opinion that the plaintiffs are entitled to recover, there being no proof that the city has paid any one for performing the services incident to their positions. There should, however, be deducted from the amount payable to the plaintiff Mary Carew the sum of $150 earned by her during the period for which compensation is sought.

Plaintiffs' motion for direction of a verdict is granted and verdict directed as of January 15, 1912, in favor of the plaintiff Mary Carew in the sum of $2,335, and in favor of the plaintiff Lillian Cantwell in the sum of $2,485.

Exception to defendant, 30 days' stay of execution after entry of judgment and 60 days to make case on appeal in each case.