THOMAS J. REILLY, Plaintiff, v. THE CITY OF NEW YORK, Defendant.

Municipal Court of New York, Borough of Manhattan, First District, July 7, 1937.

*David A. Savage,* for the plaintiff.

*Paul Windels, Corporation Counsel [Willard M. L. Robinson* of counsel], for the defendant.

SHALLECK, J.  Plaintiff is one of eleven locomotive engineers employed by the city of New York, department of sanitation, after competitive civil service examination.  The employment is on a per diem basis, to be paid only for the days on which employed, at the rate of ten dollars and fifty cents per day.  The duties of locomotive engineer consisted of operating the small locomotives which are used to pull one or more dump cars from the bulkhead of Rikers Island back to the dumps in the interior of the island. To each locomotive there was also assigned one fireman.  Rikers Island is used as a place to deposit refuse consisting of ashes, street sweepings and rubbish.  This refuse is collected in the city of New York and taken to waterfront dumps where it is loaded on scows. These scows are then towed to Rikers Island, unloaded, placed in dump cars which are hauled by locomotives to the dumps.

The city budget for the year 1935 provided an appropriation of $36,571.50 for eleven locomotive engineers at $10.50 per day for 3,483 days, or approximately 324 working days for each engineer. Thereafter, the board of estimate and apportionment, acting on the advice of the commissioner of sanitation that the appropriation for locomotive engineers would not be needed, reduced such appropriation on March 8, 1935, to 2,212 days at $10.50 per day for seven locomotive engineers, and 1,059 days at $10.50 per day for four locomotive engineers, totaling $34,345.50.  On April 26, 1935, the board of estimate and apportionment, upon the same advice of the commissioner of sanitation, again reduced the appropriation for locomotive engineers, effective as of May 16, 1935, to $24,055.60 for eleven locomotive engineers at $10.50 per day.  On October 18, 1935, the board of estimate and apportionment increased the appropriation to $27,830.25, so as to permit each locomotive engineer to take two weeks' vacation.

Plaintiff worked 245 days during the year 1935, and seeks to recover the per diem wages of locomotive engineers for seventy-nine days during 1935, asserting that the department of sanitation employed unclassified laborers to operate the locomotives during

those seventy-nine days instead of using locomotive engineers. It is conceded that plaintiff's position was never abolished, that he was never suspended, or discharged; and I find from the evidence that plaintiff was at all times ready, able, and willing to work.

If there was work for locomotive engineers, the plaintiff was entitled to perform such work in preference to unclassified laborers and firemen who were employed as such laborers and firemen and not as locomotive engineers. Laborers testified to having operated the locomotives. Others testified to having seen them operate the locomotives. I am satisfied from all the evidence that laborers and firemen did from time to time operate locomotives while the regularly constituted locomotive engineers were without work, and were not permitted to work. While the commissioner of sanitation had a right to apportion the work amongst these per diem engineers as and when there was work to be done, nevertheless, when more locomotive engineers were required, it was the duty of the commissioner of sanitation to have put these eleven engineers to work, and not arbitrarily to substitute unclassified laborers or firemen to operate locomotives. The plaintiff was never separated from the city service, and the alternate periods of idleness and work for the plaintiff were not discharges or reappointments. (*Driscoll v. City of New York*, 78 App. Div. 52.)

Sections 1542 and 237 of the Greater New York Charter do not preclude the plaintiff from maintaining the present action. Assuming, as defendant contends, that under these sections power is vested in the board of estimate and apportionment to transfer excess appropriations from one code to another, and that the commissioner of sanitation is precluded from exceeding his budgetary appropriations, there is no provision which permits him, in order to operate within the limits of his appropriation, to disregard the other statutes of this State which are mandatory, *i. e.*, the use of regular locomotive engineers certified by the civil service commission from regularly constituted lists based upon competitive examinations, by arbitrarily hiring laborers, at a lower wage, and whose qualifications are uncertain, and not so certified. If such action were permitted, he could readily, at other times he felt were propitious, flaunt a fundamental policy of the government of this State. It is, perhaps, not the immediate results that are likely to ensue from such action, but those mediate results which not unlikely would undermine the morale of those in governmental employ.

There were sufficient funds available to the department of sanitation for the work at Rikers Island. To have permitted the transfer of funds to stand, and to have laid off the locomotive engineers, and to have used laborers to operate the locomotives would in reality have nullified the very purpose of the Civil Service Law.

In this manner, a commissioner, in order to make a showing of economy, might arbitrarily reduce his budget, use unclassified labor, thereby reduce the force of experienced civil service employees, thus effecting the circumvention of the Civil Service Law, the purposes of which are too well-known to warrant extended comment.

The plaintiff was duly appointed to his position from regular civil service lists after competitive examination, and although he is compensated on a per diem basis, he is within the Civil Service Law, which includes all offices and service of the State or of any such civil division or city. (*O'Hara* v. *City of New York*, 46 App. Div. 518; affd., 167 N. Y. 567; *Siegelbaum* v. *City of New York* 249 App. Div. 153.) Plaintiff, as a civil service employee, had a right to this position as regulated by statute, and his time of service was also regulated in the same way, and therefore, he could not be arbitrarily prevented from working. In *Driscoll* v. *City of New York* (*supra*) the court said: " His compensation is for a day's work at a fixed day's wages, and we think that his right to those wages would continue from time to time were he arbitrarily prevented from working or if work were refused him in that manner by those having the authority to control his action, and that is so not because his wages or compensation are attached as an incident to the position he holds, but because of his right to employment until discharged results from the evident policy of the Civil Service Law (Laws of 1899, chap. 370, as amd.)."

It was a violation of sections 14 and 16 of the Civil Service Law to have foreclosed the plaintiff and other locomotive engineers from working, and at the same time to have permitted laborers (who were without such civil service rating, and were paid laborers' wages at five dollars and fifty cents per day) to operate the locomotives. Plaintiff was deprived of further work by the commissioner of sanitation, and was entitled to receive wages for so long a period as he was so arbitrarily prevented from working. He may not recover for work not done by others, but may only recover for such periods as laborers and firemen actually operated the locomotives. There is sufficient evidence for me to reasonably determine that at least one laborer or fireman operated a locomotive for each of seventy-nine days. This work should have been divided amongst the eleven locomotive engineers, so that the plaintiff should have had seven and two-elevenths days additional work at ten dollars and fifty cents per day, or seventy-five dollars and forty cents.

Judgment for plaintiff for seventy-five dollars and forty cents. Five days' stay of execution.