THE GEORGIA CRACKER *v.* HESTERS, sheriff, *et al.*

No. 13987. APRIL 14, 1942.

*Heath & Heath* and *Powell, Goldstein, Frazer & Murphy,* for plaintiff.

*J. Roy McGinty* and *Y. A. Henderson,* for persons at interest.

*Newt Gaskins* and *Harry S. McCowen,* for defendants.

REID, Chief Justice. The Court of Appeals propounded the following questions:

"1. Where a sheriff has caused to be published a notice of a large number of tax advertisements, written en bloc, with one general heading and one general closing, with his name at the end, but set forth in separate paragraphs therein a complete advertisement of property of each defendant in each tax execution, with all necessary jurisdictional facts, is each of the paragraphs a separate and distinct advertisement for the purpose of computing advertising rates, so as to entitle the publisher to collect fees therefor on said paragraphs on the basis that each paragraph is a separate advertisement, as per the rates prescribed by the Code, § 39-1105?

"2. Or is said advertisement en bloc, which contains in separate paragraphs an advertisement of the property of the defendant in each of the various tax executions, one advertisement for the purpose of computing advertising rates, so as to entitle the publisher to collect therefor as one advertisement, as per the rates prescribed by the Code § 39-1105?"

There seems to have been no adjudication dealing with the exact situation embraced in the question; and since it is a matter of first impression and of importance in the administration of our tax laws, it might be well first to examine the basic statutory scheme for the assessment, levy and collection of taxes, one step of which is involved in the question.

All lands in this State subject to taxation, whether improved or unimproved, *shall be returned by the person owning the same or by his agent or attorney.* Code, § 92-6206. The oath to be administered to all persons making returns of taxable property for themselves or as agents of others, and to be attached to lists as provided by law, prescribes in part: "and I further swear that I returned, for the purpose of being taxed thereon, every species of property that I own in my own right, or have control of, either as agent, executor, administrator, or otherwise." § 92-6216. Taxes shall be charged against the owner of property if known, and against the specific property itself if the owner is not known. § 92-110. Liens for taxes shall cover the property of taxpayers liable to the tax from the time fixed by law for valuation until the same are paid. § 92-5708. The tax-collectors shall, on the 20th day of December in each year, issue executions against each delinquent or defaulting taxpayer, unless further time is allowed as provided by law. § 92-5102. When the tax liability is put in the form of execution, it is provided (§ 92-8001) that "whenever the sheriff or other officer of any county shall collect" the same he shall be entitled to certain specified fees. § 92-8002 provides: "Tax-collectors shall be allowed a fee of 50 cents for issuing tax executions; but no tax-collector, sheriff, or constable shall receive costs on said executions, unless the same shall be collected from the defendant." The Code, § 92-8003, provides for the fee of the sheriff in making levy in certain cases. § 92-8101 provides for sale of property levied on under tax execution, and § 92-8102 provides: "Sales under tax executions shall be made under the rules governing judicial sales." Chapter 39-11 deals with the advertisement of judicial sales. § 39-1101, after prescribing the number of weeks for publication and the newspaper, requires that the sheriff shall publish "notice of all sales of land and other property executed by him; in which advertisement he shall give a full and complete description of the property to be sold, making known the name of the plaintiff and defendant and the person who may be in the possession of such property." § 39-1102 relates to the time and number of insertions of such advertisement. §§ 39-1103 and 39-1104 relate to the selection of the official organ for such legal advertising.

We come next to the statute directly involved in the question

propounded, the one fixing the rate of compensation to be allowed the publisher for advertising (§ 39-1105), which provides: "The rates to be allowed publishers for publishing legal advertisements shall be as follows: For each 100 words, the sum of $1 for each insertion for the first four insertions; for each subsequent insertion, the sum of 50 cents per 100 words. In all cases fractional parts shall be charged for at the same rates; and no ordinary, sheriff, coroner, clerk, marshal, or other officer shall receive or collect from parties, plaintiff or defendant, other or greater rates than herein set forth."

The aforementioned statutes clearly indicate that in the general scheme of taxation in this State the obligation of returning property is primarily upon the owner. Each return is separate from that of others, except in cases of joint ownership. Where the owner is known the execution against him is in personam. The idea of separation and distinctiveness in the return, charge, lien, and execution for taxes between different taxpayers, except in cases of joint ownership, is clearly apparent throughout. The liability of each taxpayer is separate and distinct from that of every other taxpayer.

The object of the so-called legal advertisement of course is notice. That is true whether it be in reference to a tax sale or some other form of judicial advertisement. The purpose is to have adequate notice to the parties involved, and to the public. We need not get confused by the mixing of terms or words of designation. Whether a publication of the character involved in the question certified be called by the name "publication" or "notice" or "advertisement," the question remains the same. We think perhaps the clearer statement would be that it is one publication or one notice of the sheriff's intention, pursuant to his duties, to conduct the several sales of the several properties belonging to the several persons levied on under the several tax executions. We have seen that under the scheme of levying taxes in this State each proceeding is contemplated as a separate one moving against the particular person whose tax liability is being enforced. The advertisement of the property for sale is but one step in the proceeding to collect the tax. It is a necessary step where there has been default, and the legislature has provided as a part of the means of enforcing this liability an "advertisement" of the property levied on for sale.

The question propounded to us does not inquire whether the sheriff, under such a notice of sale or sales, would conduct one general auction en masse or en bloc, but it inquires whether the publication of notice, or advertisement, shall be treated as one advertisement *for the purpose of computing compensation due the publisher.*

Three parties may be said to be involved in the determining of the amount of advertising cost—the taxpayer, out of whose property the cost must be taken—the sheriff, whose duty it is to make the levy, cause the advertisement to be made and the sale to be had, and—the taxing authority, that is the State, county, or subdivision having power to levy taxes. In view of the provisions of the various statutes respecting such tax liability and such sales, and in the light of our knowledge as to the uniformly prevailing practice, it must be assumed that the Court of Appeals in propounding this question contemplated separate sales under each levy as disclosed by the separate "paragraphs" of the published notice.

The defendant in each tax execution would of course be liable for the full cost of advertising his property for sale, to be computed as provided in the Code, § 39-1105, if it happened that the property of no other defaulting taxpayer was being advertised at the same time. The question gets down to this—is the cost in such individual case to be reduced as to him by virtue of the fact that properties of other taxpayers who are likewise in default are being advertised for sale at the same time and in the same newspaper, all as a part of the duties of the sheriff?

We agree with counsel for the publisher that the statute involved is not a revenue measure, and that the doctrine under which such statutes are construed liberally in favor of the taxpayer does not apply as in *Mystyle Hosiery Shops Inc.* v. *Harrison,* 171 *Ga.* 430 (155 S. E. 765), *Case-Fowler Lumber Co.* v. *Winslett,* 168 *Ga.* 808 (149 S. E. 211), and *McIntyre* v. *Harrison,* 172 *Ga.* 65 (157 S. E. 499). If difficulty arises in the construction of such statutes, it should be solved by resort to an understanding of the legislative scheme for enforcing the collection of taxes, keeping in mind that they wish to provide the most expeditious method, and in case of sales that they would wish to provide adequate notice to the public. Since the legislature did not anticipate or provide for this exact situation, it is our view that we must take the statute as we find it, and apply it as to each execution, levy,

and sale separately made. We find its terms clear. The officer is not permitted to charge or collect "any other or greater" rate of advertising cost. As bearing somewhat upon the question see 39 Am. Jur. 12, § 20 : "A public officer has no authority to make a contract which changes the compensation fixed by statute; therefore, under a statute providing that a printer shall receive a specified sum for each insertion of an official notice, the printer may recover the statutory allowance, notwithstanding he entered into a contract to do the work for a less sum," citing Hoffman v. Chippewa County, 77 Wis. 214 (45 N. W. 1083, 8 L. R. A. 781), in which it is said: "Thus the statutes expressly prescribe the fees which the printer shall receive, and the county clerk had no authority to make a contract which changed them. . . The principle of law relied on is that when the compensation of a party performing services for the State is fixed by statute, it can not be reduced by the officer or person by whom he is employed; and since here the statute expressly declares that the printer shall receive thirty cents for each lot or tract of land in the advertised list, the compensation could not be diminished by any arrangement or contract which the county clerk might make in respect thereto. This contention of counsel is sustained by a number of well-considered decisions. Goldsborough v. United States, Taney, C. C. Dec. 80; People v. Board of Police, 75 N. Y. 38; People v. French, 91 N. Y. 265; Kehn v. State, 93 N. Y. 291; Riley v. New York, 96 N. Y. 331."

If we consider the question from the point of view that the advertising cost is a part of the liability of the taxpayer under each tax execution, just as some other fixed item of cost, as we believe we must, it would seem to follow that the notice of each separate sale should be considered as a separate and distinct "advertisement" "for the purpose of computing advertising rates" as prescribed by the Code, § 39-1105.

It is perhaps but stating another reason for our conclusion to point out that if this theory were not accepted, a defaulting taxpayer in one county might in the advertisement of his property pay one rate (if his alone was being advertised), while another, with the same number of words, might pay a different rate or amount, if advertised at the same time along with others. We do not think the legislature so intended.

Our decision is thus made under the questions propounded, not in the light of a controversy between the sheriff and the publisher, but rather in the more abstract sense of what the statute means in one of the steps necessary in the collection of taxes defaulted by various individuals.

Accordingly, the first question is answered in the affirmative, and the second question in the negative. *All the Justices concur.*